581 P.2d 700

**John Robert CURRIE and Diane Currie, his wife, Appellants,**

v.

**Milton SECHRIST, as Manager of Tempe Shopping Center, Appellee.**

**No. 1 CA–CIV 3611.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 11, 1978.

Rehearing Denied June 9, 1978.

Review Denied July 18, 1978.

John D. Lewis, Tempe, for appellants.

Evans, Kitchel & Jenckes, P. C. by Jerry C. Bonnett, David P. Kimball, III, Phoenix, for appellee.

## OPINION

FROEB, Chief Judge.

This case involves the liability of a shopping center for a towing company's refusal to return possession of a car to the owner. We find no basis for liability in the record and, therefore, uphold the summary judgment in favor of the shopping center.

The following undisputed facts were presented to the trial court in the summary judgment proceedings. For the eight years preceding October 2, 1975, the day the incident giving rise to this lawsuit occurred, Ray Dooley, who operates the American Towing Company (Towing Company), had been authorized by the Tempe Shopping Center (Shopping Center) to tow away from the Shopping Center's parking lot cars parked there without authorization. The Shopping Center had posted throughout the parking lot signs which stated: "Private Parking for Tempe Shopping Center Customers Only While Transacting Business Herein. Violators Will be Impounded at Vehicle Owner's Expense. To reclaim vehicle call 969–6602 [the Towing Company's telephone number]. Other than for the posting of the signs, all details concerning surveillance, towing, storage and fees were

left entirely to the Towing Company's discretion. The Towing Company used its own equipment. It neither paid nor received from the Shopping Center any compensation for its activities.

The authorization was in the form of two letters to Dooley. The letter of October 17, 1967, stated: "Since you are acting as an independent contractor, we have no control over the fee you charge for both towing and storage and it is understood that neither we nor the owners of the center will receive any compensation or reimbursement from you for this work." The letter of September 23, 1975, stated substantially the same. Thus, the Shopping Center was benefitted solely by the removal of unauthorized cars and the Towing Company was compensated solely by the fees it collected from car owners.

On October 2, 1975, John Currie parked his car in the Shopping Center's parking lot underneath a warning sign and left it for approximately two hours. He returned to find the Towing Company's agents preparing to tow his car away. He objected to this course of conduct and offered to remove the car from the parking lot himself. The agents said they would stop only if he would pay them $25.00. When he objected to paying, they towed his car away. Upon inquiry later the same day, the Towing Company told him he would have to pay $50.48 to reclaim his car. He refused to pay and the Towing Company kept the car pending the payment of the fee and storage charges. Currie sued the Towing Company and Milton Sechrist, the president of Tempe Shopping Center, Inc., which owns the Shopping Center and the real property upon which it is situated, for the wrongful taking and retention of his car. The trial court denied Currie's motion for summary judgment as to the Towing Company and the case against it is pending. Currie appeals the trial court's grant of Sechrist's motion for partial summary judgment dismissing with prejudice the action against Sechrist.

The only question on appeal is whether any genuine issue of material fact exists in the record which would prevent the entry of summary judgment. Currie contends that the Towing Company's acts in towing the car and demanding payment before its return were wrongful and that the Shopping Center is liable for allowing those acts. The trial court determined that Dooley was acting as an independent contractor and that the Shopping Center was not liable for the Towing Company's acts.

■ As a preliminary matter, Sechrist contends that, since Currie's only argument on appeal to establish the Towing Company's liability is that the taking and the retention of his car was a violation of the due process clause of the fourteenth amendment of the United States Constitution, we should treat the question of conversion as abandoned. Sechrist argues that the constitutional argument fails since the required state action is absent and, because Currie presents no other theory to establish the wrongfulness of the Towing Company's actions, the Shopping Center cannot be held liable for those acts. We agree that no governmental action is involved in this case and that, therefore, no violation of the fourteenth amendment can be found, *The Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), but we disagree with Sechrist's abandonment theory. We think that conversion is sufficiently raised in the pleadings and in the briefs for us to pass upon the issue.

■ Currie claims that he made a purchase in one of the stores in the Shopping Center and, therefore, he was not parked in violation of the signs. The Towing Company disputes this but, for purposes of review of the summary judgment, we accept Currie's version. Currie also claims that the Towing Company's refusal to return the car until he paid for towing and storage constituted a conversion. He argues that, although the Shopping Center, as a landowner, had the right to remove trespassing cars from its land, the privilege only extends to use of reasonably necessary force and when he volunteered to remove the car himself, the need for the use of any force ceased and the landowner's right to remove it terminated. He also argues that, according to

*Fields v. Steyaert*, 21 Ariz.App. 30, 515 P.2d 57 (1973), the Towing Company had no valid garageman's lien for towing and storage charges under A.R.S. § 33–1022(B) because he had not agreed to the charges and had, in fact, demanded the return of his car. For purposes of this appeal we assume that Currie could prevail on these theories so as to render the Towing Company liable for its conduct. Nevertheless, even though the Towing Company might ultimately be held liable, the record shows that it was acting as an independent contractor and that the Shopping Center cannot be held liable for the Towing Company's acts.

The relationship which existed between the Shopping Center and the Towing Company was clearly that of employer and independent contractor as defined by our court in *Bible v. First National Bank of Rawlins*, 21 Ariz.App. 54, 56, 515 P.2d 351, 353 (1973):

> While Restatement of Agency and the courts have attempted to list various criteria by which to test the relationship involved, "the ultimate fact which these evidentiary facts are merely intended to assist the jury or court in determining, is whether the alleged servant is subject to the other's control or right to control in the manner in which he reaches the desired result" (citation of cases omitted).
>
> If control or right to control the agent is reserved in the principal, a master-servant relationship is created which subjects the master to liability for the servant's torts. Conversely, if no control or right to control the action of the agent is vested in the principal, the agent is classified as an independent contractor . . .

*See also Tafoya v. Trisler*, 8 Ariz.App. 250, 445 P.2d 452 (1968). In this case the Shopping Center authorized the Towing Company to remove unauthorized cars. The manner in which the removals were effected was left solely to the Towing Company's discretion. The Shopping Center reserved no control or right to control the Towing Company's conduct.

■ The general rule has long been that there is no vicarious liability upon the employer for the torts of an independent contractor. *E. L. Jones Construction Co. v. Noland*, 105 Ariz. 446, 466 P.2d 740 (1970); *Bible v. First National Bank of Rawlins*; W. Prosser, *The Law of Torts* § 71 (4th ed. 1971); Annot., 18 A.L.R. 801 (1922); *Restatement, Second, Torts* § 409 (1965). The most commonly accepted reason for the rule is that, "since the employer has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility of preventing the risk, and administering and distributing it." W. Prosser, *supra* § 71 at 468. Exceptions to the general rule of nonliability of the employer for the torts of an independent contractor exist, but the facts of this case fit into none of them.

■ Currie contends that a jury could infer from the long duration of the employment that Sechrist knew of the procedures and practices followed by the Towing Company. From this the jury could find that the Shopping Center acquiesced in the Towing Company's tortious conduct and that acquiescence could be the basis for imputing liability under master-servant, principal-agent, or joint tort-feasor principles.

The Shopping Center gave permission to the Towing Company to remove unauthorized vehicles from its parking lot. Once removed, the vehicles had to be placed somewhere. The signs that the Shopping Center posted and the letters of authorization show that it knew that the Towing Company stored the vehicles it towed away and that the Towing Company charged fees for the towing and storage. Currie does not contend that knowledge of this conduct by the Shopping Center gives rise to liability. As we have already stated, the Shopping Center was entitled to have the Towing Company remove unauthorized vehicles and place them in storage. For so doing, the Towing Company could properly make a reasonable charge.

The tortious conduct of which Currie complains is the Towing Company's refusal to release his car when he offered to re-

move the car himself at the parking lot and the failure later to permit him to reclaim his car until he paid the charges. Currie contends that retaining his car under these circumstances constituted conversion.

Sechrist did not know about the incident at the parking lot and cannot be liable for conversion if, in fact, one occurred. As for the later refusal of the Towing Company to return the car to Currie, there is no factual showing that Sechrist knew of this course of conduct. No inference can be drawn from the use of the word "impounded" on the posted signs that the Shopping Center knew of the Towing Company's holding of the cars for what Currie calls "ransom." According to *Webster's New Collegiate Dictionary* (1974), "impound" means "to shut up in or as if in a pound: confine." The definition does not imply a holding for charges, nor did the posted signs mention how the car could be reclaimed. The signs merely gave a telephone number. Not until the car owner called the number would he learn the details of securing the return of his car.

Nor can we agree with the contention that a jury could infer knowledge on the part of Sechrist of the tortious conduct merely by reason of the long duration of the relationship between Sechrist and the Towing Company. There is nothing in the *record* which shows that Sechrist was aware that the Towing Company would refuse to return possession of a car unless the charges were paid. The trial court was correct in determining that no factual dispute was present in the record concerning this.

The judgment of the trial court is affirmed.

NELSON and OGG, JJ., concurring.