SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| RICHEY MYERS, surviving husband of Jo Ann Myers, deceased, on his own behalf and on behalf of Laura Myers and Mark Myers, surviving children of Jo Ann Myers, deceased,<br><br>　　　　　Plaintiffs-Appellants,<br><br>　　　　　　　　v.<br><br>CITY OF TEMPE, an Arizona municipal corporation,<br><br>　　　　　Defendant-Appellee. | ) Arizona Supreme Court<br>) No. CV-05-0154-PR<br>)<br>) Court of Appeals<br>) Division One<br>) No. 1 CA-CV 04-0336<br>)<br>) Maricopa County<br>) Superior Court<br>) No. CV 03-007595<br>)<br>)<br>)<br>) **O P I N I O N**<br>)<br>)<br>)<br>) |

Appeal from the Superior Court of Maricopa County
No. CV 03-007595
The Honorable Anna M. Baca
**AFFIRMED**

_____

Memorandum Decision of the Court of Appeals, Division One
No. 1 CA-CV 04-0336
**VACATED**

_____

WINTON D. WOODS & ASSOCIATES, PLLC                    Scottsdale
　　　By　Winton D. Woods, III
Attorneys for Richey Myers

TEMPE CITY ATTORNEY'S OFFICE                              Tempe
　　　By　Marlene A. Pontrelli Maerowitz, City Attorney
　　　　　Andrew B. Ching
Attorneys for City of Tempe

LEAGUE OF ARIZONA CITIES AND TOWNS                       Tempe
　　　By　David R. Merkel, General Counsel
Attorney for Amicus Curiae

_____

M c G R E G O R, Chief Justice

¶1      This case requires us to determine whether the City of Tempe may be held liable for the alleged negligence of the Guadalupe Fire Department (GFD) when, in compliance with an automatic aid agreement, GFD responded to Jo Ann Myers' medical emergency.  We conclude that Arizona Revised Statutes (A.R.S.) section 12-820.01 (2003) provides absolute immunity both to Tempe's decision to enter into the agreement and to the automatic dispatch of GFD.  We further conclude that because Tempe delegated its duty to provide emergency services, the city cannot be held vicariously liable for the actions of another municipality's fire department.  Therefore, we vacate the court of appeals' memorandum decision and affirm the superior court's order granting summary judgment in Tempe's favor.

**I.**

¶2      Tempe, Guadalupe, and five other municipalities participate in the East Valley Automatic Aid Agreement for Fire Protection and Other Emergency Services (the AAA).  The municipalities entered into the AAA "to continue and improve the nature and coordination of emergency assistance to incidents that threaten loss of life or property within the geographic boundaries of their respective jurisdictions."  The agreement requires participants to provide an Automatic Vehicle Location System and a computerized Geographic Information System that,

2

used together, "allow the dispatch system to match the closest response unit to the emergency" and then to dispatch that unit, notwithstanding that the emergency may be in a municipality other than the one in which the dispatched unit is located. Tempe city officials, advised by Tempe's Fire Chief and Assistant Fire Chief, expressly decided the advantages of entering into the agreement outweighed the risks.

¶3 On July 31, 2002, Jo Ann Myers experienced an "asthma-like attack" while in Tempe. In accordance with the AAA, the closest fire unit, which was from GFD, responded to Ms. Myers' emergency. GFD allegedly intubated Ms. Myers improperly, ultimately causing her death.

¶4 On April 22, 2003, Richey Myers (Myers), Jo Ann Myers' surviving spouse, brought suit against the City of Tempe, as well as the Town of Guadalupe and the members of GFD who responded to the call, alleging that GFD's gross negligence caused Ms. Myers' death. Myers claimed that Tempe was responsible for his wife's death because it "had a non-delegable duty [to provide emergency medical services] to persons within its borders, including Jo Ann Myers." Tempe moved for summary judgment, arguing that it could delegate any duty to provide emergency care within its borders and that A.R.S. § 12-820.01.A.2 affords the city absolute immunity for its decision to make such a delegation. The trial court concluded that

3

because "Plaintiff's action is premised on Defendant's 'fundamental policy decision' to enter into the AAA," the city was entitled to absolute immunity.

¶5        The court of appeals reversed, noting that "Tempe is not absolutely immune for actions and decisions made in the course of implementing the emergency response services allowed by the AAA." The court of appeals also held that, under A.R.S. § 11-952.C (2003), "Tempe cannot relieve itself of liability for providing emergency services by delegating its obligation to provide those services to other entities through the AAA."

¶6        We granted review to resolve these issues of statewide importance. *See* ARCAP 23(c). We exercise jurisdiction pursuant to Article 6, Section 5.3, of the Arizona Constitution.

## II.

¶7        Because we are reviewing a summary judgment, "we view the evidence in a light most favorable to the party opposing it." *Hill-Shafer P'ship v. Chilson Family Trust*, 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990). We will assume, for purposes of our review, that the evidence is sufficient to support a finding that GFD was grossly negligent. *See id.* ("Summary judgment is appropriate when there is no substantial evidence to support an alleged factual dispute, either because the tendered evidence is too incredible to be accepted by reasonable minds, or because, even conceding its truth, it leads to an inevitable legal

4

conclusion against its proponent.").

¶8        Three decisions could establish a basis for Tempe's liability.  The first is Tempe's decision to enter into the AAA.  The second is the decision to dispatch GFD to Ms. Myers' emergency.  The third is GFD's decision to provide the specific care it gave Ms. Myers.  The first two decisions implicate the reach of Tempe's absolute immunity.  The third decision implicates Tempe's vicarious liability.

**A.**

¶9        Deciding whether Tempe is absolutely immune involves statutory interpretation and is subject to this Court's de novo review.  *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994).  Section 12-820.01.A provides:

> A public entity shall not be liable for acts and omissions of its employees constituting either of the following:
>
> 1. The exercise of a judicial or legislative function.
>
> 2. The exercise of an administrative function involving the determination of fundamental governmental policy.

Tempe makes no claim that any of its actions in this matter involve judicial or legislative functions.  We focus our inquiry, therefore, on whether Tempe's challenged actions involve "[t]he exercise of an administrative function involving

5

the determination of fundamental governmental policy." *See* A.R.S. § 12-820.01.A.2.

## 1.

¶10    The first of Tempe's decisions that could give rise to this action is the decision to enter into the AAA. That decision indisputably determined fundamental governmental policy:  It involved weighing risks and gains, concerned the distribution of resources and assets, and required consulting the city's subject matter experts.  *See* A.R.S. § 12-820.01.B; *Doe v. State*, 200 Ariz. 174, 176 ¶ 6, 24 P.3d 1269, 1271 (2001) (noting that the statute "provides immunity for 'such matters as . . . a decision as to the direction and focus of an entire regulatory scheme'") (quoting *Fidelity Sec. Life Ins. Co. v. State*, 191 Ariz. 222, 225 ¶ 11, 954 P.2d 580, 583 (1998)). Myers recognizes that absolute immunity protects this decision.

## 2.

¶11    The second "decision" that conceivably could provide a basis for Tempe's liability involves the decision to dispatch GFD, rather than some other emergency unit, to respond to Jo Ann Myers' emergency.  The court of appeals concluded that absolute immunity does not protect this decision because it was an implementing decision, rather than "[t]he exercise of an administrative function involving the determination of fundamental governmental policy."  *See* A.R.S. § 12-820.01.A.2.

6

¶12     Myers correctly argues that we give great weight to the statute's limiting phrase, "determination of fundamental governmental policy," and have not extended absolute immunity to actions that merely implement a fundamental policy, even when those actions are themselves decisions involving some level of discretion. *See, e.g.*, *Fidelity*, 191 Ariz. at 225-26 ¶¶ 10-12, 954 P.2d at 583-84 (holding that the Arizona Department of Insurance's decision to grant a company's application for transfer of domicile was not entitled to absolute immunity, even though it involved some discretion, because the decision merely implemented a policy). This case, however, does not involve an implementing decision. The terms of the AAA determined, without the need for any additional implementing decision, which emergency unit would respond to Ms. Myers' call for help. The Automated Vehicle Location System, working in conjunction with the Geographic Information System, identified the emergency unit nearest Ms. Myers, and the dispatcher sent that unit. Tempe's participation in the AAA and the terms of that agreement, without anything more being required, caused the dispatch of GFD to Ms. Myers' emergency. It would be strange indeed if, as Myers concedes, the decision to enter into the AAA were protected by statutory immunity, yet the decision to dispatch GFD to the emergency, which follows automatically from the terms of the AAA, nonetheless deprived Tempe of immunity.

7

¶13    Because no city made an "implementing decision," this case is not like those involving an allegedly flawed implementation of a fundamental governmental policy. In *Fidelity*, plaintiffs alleged that they were harmed by a decision that implemented an insurance department policy. 191 Ariz. at 224 ¶ 2, 954 P.2d at 582. Likewise, in *Doe*, we held that "the State's decision to require that teachers be certificated, as well as decisions related to such matters as establishing certification requirements . . . receive absolute immunity," but if "the State erred in its processing of a particular teaching application," only qualified immunity would apply. 200 Ariz. at 177 ¶¶ 9, 10, 24 P.3d at 1272 (2001). Both opinions, which held that implementing decisions are not entitled to absolute immunity, involved allegedly erroneous decisions that were made to implement fundamental policy decisions. This case involves no such process. Myers does not and could not claim that the dispatcher erred in sending the GFD. The AAA unambiguously dictated that "decision."

¶14    The facts of the instant case are more comparable to those of *Evenstad v. State*, 178 Ariz. 578, 875 P.2d 811 (App. 1993), than to the facts in *Fidelity* or *Doe*. In *Evenstad*, the plaintiffs attempted to hold the State liable for issuing a driver's license to "a habitual drunkard or a person whose operation of a vehicle would be inimical to public safety." *Id.*

8

at 580, 875 P.2d at 813. Their claim did not assert that a Motor Vehicle Department (the MVD) employee had issued the license negligently, but rather that the MVD had failed to implement procedures, as required by statute, to identify persons whose operation of a vehicle was harmful to public safety and to deny them a license. *Id*. The MVD, however, had instituted policies in response to the legislature's directive, and the decision to adopt those policies was "shielded by A.R.S. section 12-820.01 [because it] constitute[d] the exercise of an administrative function involving the determination of fundamental governmental policy." *Id.* at 583, 875 P.2d at 816. The court refused to consider whether the department should have adopted *different* policies, noting that "neither litigants nor the courts may second-guess discretionary fundamental governmental policy decisions made by State departments at the administrative level." *Id.* at 585, 875 P.2d at 818. Like the MVD employee in *Evenstad*, the dispatcher in this case did nothing more than follow the policy Tempe adopted in the AAA. The dispatch mandated by the AAA, like the entry into the AAA, cannot be subjected to judicial review.

**B.**

¶15     The third decision for which Myers asserts Tempe may be liable involves choices related to the specific care GFD provided Ms. Myers and Tempe's potential vicarious liability.

9

We agree with Myers that A.R.S. § 11-952.C prevents intergovernmental agreements from eliminating a municipality's liability.[1] Tempe's entry into the AAA, however, does not prevent the city from disputing the scope and nature of its duty. *See Sanchez v. City of Tucson*, 191 Ariz. 128, 130 ¶ 6, 953 P.2d 168, 170 (1998) (allowing the city to dispute the scope of its duty even though an intergovernmental agreement was the source of the duty). Although the AAA cannot immunize Tempe from liability where it otherwise exists, the agreement also does not itself impose liability upon Tempe for the actions of GFD's emergency responders. Such liability must come from some independent source. We conclude that neither of the two potential sources of Tempe's liability, the *respondeat superior* doctrine nor the non-delegable duties doctrine, applies to the instant case.

¶16 An employer may be liable for the negligence of its employee when, "with respect to the physical conduct of the employee and the performance of his service, he is subject to the employer's control or right of control." *Throop v. F.E. Young & Co.*, 94 Ariz. 146, 150, 382 P.2d 560, 563 (1963). Members of GFD, however, are not Tempe employees, even when they operate within Tempe under a mutual aid agreement. *See Garcia*

---

[1] A.R.S. § 11-952.C states that "[n]o agreement made pursuant to this article shall relieve any public agency of any

10

*v. City of S. Tucson*, 131 Ariz. 315, 317–18, 640 P.2d 1117, 1119–20 (App. 1981) (finding that a Tucson police officer responding to an emergency in South Tucson under an "Intergovernmental Agreement for Mutual Aid in Law Enforcement" was not an employee of South Tucson because "[South Tucson] had no control over the method used by the City of Tucson police to accomplish the desired result"). Indeed, Myers does not contend that Tempe employed the emergency responders. Thus, Tempe is not liable under the *respondeat superior* doctrine.

¶17    A city may delegate most of its duties, but remains liable for certain duties even when they are carried out by independent contractors. In *Wiggs v. City of Phoenix*, we noted that if an employer has a special, or non-delegable, duty, the general rule that "an employer is not liable for the negligence of an independent contractor" does not apply. 198 Ariz. 367, 369 ¶ 7, 10 P.3d 625, 627 (2000). In his complaint, Myers claims that Tempe "had a non-delegable duty to persons within its borders, including Jo Ann Myers." We assume without deciding that GFD may be treated as an independent contractor of the City of Tempe. Therefore, if Tempe had a non-delegable duty to provide emergency services, the city may be held vicariously liable for GFD's actions.

¶18    The duty to provide emergency services, however, may

_____

obligation or responsibility imposed upon it by law."

11

be delegated.  Section 424 of the Restatement (Second) of Torts (1965) notes that an entity is liable for the actions of an independent contractor if a "statute or . . . administrative regulation" imposes the duty.  We used similar language in *Ft. Lowell v. Kelly*, describing non-delegable duties as those "imposed by statute, by contract, by franchise or charter, or by the common law."  166 Ariz. 96, 101, 800 P.2d 962, 967 (1990) (holding a landowner liable for actions of an independent contractor).  Here, however, neither the common law nor any statute, regulation, contract, franchise, or charter imposes any duty upon Tempe to provide emergency services.  It is not, therefore, one of the few non-delegable duties.[2]

¶19    Myers argues that our opinion in *Veach v. City of Phoenix*, 102 Ariz. 195, 427 P.2d 335 (1967), establishes Tempe's duty to provide emergency services.  Myers reads that opinion too broadly.  *Veach* held that once a municipality "assumes the responsibility of furnishing fire protection, then it has the duty of giving each person or property owner such reasonable protection as others within a similar area within the municipality are accorded under like circumstances," but it did

---

[2]    Other sections of the Restatement (Second) of Torts establish specific non-delegable duties.  For example, in *Wiggs*, we relied on section 418, which recognizes that a municipality has a non-delegable duty to maintain its roadways.  198 Ariz. at 370 ¶ 8, 10 P.3d at 628.

not impose upon municipalities the duty of providing emergency services. *Id.* at 197, 427 P.2d at 337. Thus, the duty of providing emergency services may be delegated because neither the common law, nor any other source recognized in *Ft. Lowell* or Section 424 of the Restatement, imposed the duty on Tempe; Tempe assumed that duty. Because Tempe could delegate its duty to provide emergency services, we cannot hold Tempe vicariously liable for GFD's actions.[3]

### III.

¶20    For the foregoing reasons, we vacate the decision of the court of appeals and affirm the judgment of the superior court.

_____
Ruth V. McGregor
Chief Justice

CONCURRING:

_____
Rebecca White Berch, Vice Chief Justice

_____
Michael D. Ryan, Justice

_____
Andrew D. Hurwitz, Justice

_____
W. Scott Bales, Justice

---

[3]    We also do not address whether entering the AAA satisfied Tempe's duty to provide equivalent service, as required in *Veach*, because Tempe's absolute immunity under A.R.S. § 12-820.01.A.2 prohibits judicial review of such decisions.