IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| STEVEN H. SIMON, | ) | |
| | ) | 2 CA-CV 2007-0055 |
| Plaintiff/Appellant, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| SAFEWAY, INC., | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20054154

Honorable Sarah R. Simmons, Judge

REVERSED AND REMANDED

_____

| | |
|---|---|
| Steven H. Simon | Tucson |
| | In Propria Persona |
| | |
| Quarles & Brady LLP | |
| By Timothy M. Medcoff and Deanna R. Rader | Tucson |
| | Attorneys for Defendant/Appellee |

_____

V Á S Q U E Z, Judge.

¶1        In this personal injury action, appellant Steven Simon alleges he was injured at a Safeway grocery store during an altercation with a security guard. The guard was employed by Sonoran Desert Investigations, Inc. ("SDI"), which in turn had contracted with appellee Safeway Stores, Inc. to provide loss prevention and security services ("security services") at its stores. Simon appeals from the trial court's grant of summary judgment in favor of Safeway and the denial of his motion for new trial on the issue of Safeway's vicarious liability for the alleged intentional torts of the security guard. He also challenges the court's denial of his motion to continue its summary judgment ruling to allow additional discovery pursuant to Rule 56(f), Ariz. R. Civ. P. We reverse and remand.

## Facts and Procedural Background

¶2        We view the facts in the light most favorable to the party against whom summary judgment was granted. *Wolfinger v. Cheche*, 206 Ariz. 504, ¶ 4, 80 P.3d 783, 785 (App. 2003). On July 30, 2003, Simon entered a Safeway store to shop. At one point he removed two cans of cat food from a shelf but then put them back. After purchasing other items, he left the store. Outside, Simon was approached by security guard and SDI employee Jose Howard. Howard accused Simon of shoplifting and lifted Simon's shirt, apparently to see if he had any items concealed underneath. Although Howard discovered no stolen items, he nevertheless told Simon not to return to the store. When Simon asked to speak with a manager, Howard escorted him to a back room in the store.[1] There, the two

---

[1]The parties dispute the nature of Simon's reentry into the store. However, for purposes of the motion for summary judgment below, Safeway stipulated that Simon was a business invitee and therefore had permission to reenter.

engaged in a verbal and physical altercation during which Simon was allegedly thrown to the floor and injured.

¶3        Simon filed this lawsuit against Safeway, claiming that he had been physically and sexually assaulted by Howard and that Safeway was vicariously liable because it had a nondelegable duty to "employ properly licensed and trained security guards." Simon also alleged Safeway was directly liable because it had negligently failed to train and supervise Howard. Safeway filed a motion for summary judgment, which the trial court originally denied. In response to Safeway's motion for reconsideration, Simon moved the court to defer its ruling so he could conduct additional discovery. The court granted Safeway's motion for reconsideration, granted summary judgment in favor of Safeway, and denied Simon's motion to continue. Simon then filed a motion for new trial, pursuant to Rule 52(a)(8), Ariz. R. Civ. P., which the court also denied. Simon appeals the trial court's grant of summary judgment and its denial of his motion for new trial and Rule 56(f) motion for additional discovery. We have jurisdiction pursuant to A.R.S. § 12-2101(B), (F).

**Discussion**

I.        Rule 56(f) motion

¶4        We first address Simon's contention that the trial court erred in denying his motion to continue its ruling on Safeway's motion for reconsideration of its denial of summary judgment. Although not designated as a motion pursuant to Rule 56(f), Ariz. R. Civ. P., we treat Simon's motion as such because the trial court apparently did so. In denying Simon's request for a continuance, the court concluded his motion "fail[ed] to offer

3

anything which would be admissible evidence and which would offset" the evidence Safeway presented in support of its motion for summary judgment. We review a trial court's ruling on a Rule 56(f) motion for an abuse of discretion. *Lewis v. Oliver*, 178 Ariz. 330, 338, 873 P.2d 668, 676 (App. 1993).

¶5        Simon argued in his motion that further discovery was necessary to determine the precise nature of the relationship between Safeway and Howard, and he requested additional time to depose three witnesses—Howard, Jesse Blanco, the Safeway store manager, and Jade Herman, the store employee who allegedly first told Howard that Simon might be shoplifting. On appeal, Safeway argues we should affirm the trial court's ruling because the discovery requests would have produced no material facts to defeat summary judgment and Simon's motion did not contain a sworn affidavit, in accordance with Rule 56(f). However, Safeway did not raise the latter objection below, and any technical deficiency in the form of the motion would have been easily remedied had Safeway done so. *See Republic Nat. Bank. of New York v. Pima County*, 200 Ariz. 199, ¶ 23, 25 P.3d 1, 7 (App. 2001) (appellate court hesitant to affirm motion to dismiss on technical grounds not raised in motion and where insufficiency curable if timely raised below); *Rhoads v. Harvey Publ'ns, Inc.*, 131 Ariz. 267, 269, 640 P.2d 198, 200 (App. 1981) (appellate court will only affirm summary judgment on grounds not raised below in limited circumstances). Furthermore, as we have noted, the trial court made its ruling on the merits. We therefore address Simon's motion on the merits.

4

**¶6**    Rule 56(f) provides, in pertinent part:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may . . . order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

A Rule 56(f) motion "requires a party to submit a sworn statement specifically describing the reasons justifying delay," which includes the evidence outside the party's control, its location, what the party believes the evidence will show, the discovery method the party wishes to use, and an estimate of the time required to complete the discovery. *Grand v. Nacchio*, 214 Ariz. 9, ¶ 72, 147 P.3d 763, 783 (App. 2006). However, "[t]he 'major objective' of Rule 56(f) is 'to insure that a diligent party is given a reasonable opportunity to prepare his case.'" *Hunter Contracting Co., Inc. v. Superior Court*, 190 Ariz. 318, 322, 947 P.2d 892, 896 (App. 1997), *quoting* Charles A. Wright et al., *Federal Practice and Procedure* § 2741 (2d ed. 1983).

**¶7**    Here, Simon requested more time to investigate the nature of Safeway's and Howard's employment relationship because he had not yet had a meaningful opportunity to do so. In his motion, he indicated he was seeking information concerning the nature of the employment relationship between Howard and Safeway, stated that he believed Howard, Blanco, and Herman each had information relevant to the employment relationship because they were "people who were involved in the day to day operation of the Safeway store . .

5

. and who were witnesses to the . . . relationship of Safeway and Jose Howard."[2]  There was no suggestion that Simon had not been diligent in attempting to obtain this evidence, and the record indicates that he timely filed the motion to continue after Safeway asked the trial court to reconsider its ruling denying summary judgment.  Instead, the court's ruling on the motion to continue was predicated on what it deemed Simon's failure to produce any admissible evidence which could defeat the evidence Safeway had already produced.

¶8        But, this is the precise purpose of Rule 56(f) motions, which expressly permit a trial court to delay ruling on a motion for summary judgment if the party opposing summary judgment states that it cannot, at that time, provide facts to justify its position and informs the court of what information it is looking for, where it thinks the information is, and how it plans on obtaining that information.  *See Bobo v. John W. Lattimore, Contractor*, 12 Ariz. App. 137, 141, 468 P.2d 404, 408 (1970).  Furthermore, there was already evidence in the record which tended to support Simon's claim that  a master-servant relationship existed so that Safeway could be liable under the theory of *respondeat superior*.  Robert Folkes, Security Director for the Phoenix Division of Safeway, specifically averred in an affidavit that Safeway did not control or actively participate in how SDI employees performed their jobs.  However, the contract between Safeway and SDI required SDI's employees to abide by Safeway's "policies and practices" when "[r]espond[ing] to any

---

[2]We recognize that Simon's motion did not contain an estimate of the time needed to complete this discovery.  However "Rule 56 is flexible" and to "expedite proceedings under Rule 56(f), a court may limit the time and scope of discovery to be completed." *Hunter*, 190 Ariz. 318, 322, 947 P.2d 892, 896 (App. 1997).  Therefore, standing alone we do not find this deficiency fatal to Simon's motion.

6

unusual situation and provid[ing] assistance and/or safety measures appropriate to such situation." Safeway's shoplifting policy also provides specific directives about how suspected incidents of shoplifting should be handled. This policy provides, in part:

1. The person suspected of shoplifting should be seen concealing one or more items of Safeway merchandise.

2. The suspect should be kept under constant observation. Unless this is done, the person is not to be detained or questioned.

3. Normally, the suspect should not be stopped until he or she actually passes the point of sales and it is obvious they are exiting the store. Observation of the suspect should be maintained while he or she is at the checkstand so that you are reasonably certain that he or she does not pay for the merchandise.

. . . .

6. If physical resistance is met, let the person go. **UNDER NO CIRCUMSTANCES IS ANY EMPLOYEE TO CHASE A SHOPLIFTER**. Force is not to be used to detain a shoplifting suspect except as necessary and only to the extent necessary, for legitimate purposes of self-defense.

7. If there is reason to believe the detained or apprehended suspect may have a concealed weapon, a "pat" search for weapons should be conducted.

. . . .

9. No detention or apprehension should be based solely upon information from a customer. A detention or apprehension may be based on information from an unauthorized store employee. This will only be permitted when this information is determined to be pertinent and accurate by an authorized employee.

(Emphasis in original.)

7

¶9     Howard's own account of the events, as documented in the form "trespass notice" he filled out on the date of the incident, indicates that "[a]s per manager Jess[]e Blanco, Simon was to be trespassed from the store. I . . . then approached Simon," and the subsequent altercation occurred. Finally, Blanco's incident report indicates that Herman alerted Howard to Simon's suspicious behavior. Cumulatively, the evidence suggests Safeway maintained some control over the use of force by security guards and how shoplifting incidents were to be handled. It also suggests that, in this particular instance, the Safeway store manager had played some role in Howard's decision to detain Simon and that Herman had been involved. Thus, the evidence offers support for Simon's claim that the relationship between Safeway and Howard here was that of master-servant.

¶10    We recognize many of the factors that suggest an independent contractor rather than master-servant relationship between Safeway and Howard are also present in this case.[3] *See Santiago v. Phoenix Newspapers, Inc.*, 164 Ariz. 505, 509, 794 P.2d 138, 142 (1990). Safeway compensated SDI for its services every four weeks, and SDI was responsible for hiring, training, and certifying its own employees, including Howard, and for providing employee compensation and benefits. *See* Restatement (Second) of Agency § 220 (1958)

---

[3]The Restatement (Second) of Agency § 220(1) (1958) defines a servant as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." A servant is distinguished from an independent contractor, who "does work for another under conditions which are not sufficient to make him a servant of the other." Restatement (Second) of Torts, § 409 cmt. a (1965); *see also Black's Law Dictionary* 774 (7th ed. 1999) (defining independent contractor as "[o]ne who is hired to undertake a specific project but who is left free to do the assigned work and to choose the method for accomplishing it").

(listing factors relevant to determining type of employment relationship). However, our case law distinguishes a servant from an independent contractor primarily based on the employer's right to control how the work is performed. *Santiago*, 164 Ariz. at 509, 81 P.2d at 142. *Compare Currie v. Sechrist*, 119 Ariz. 466, 581 P.2d 700 (App. 1978) (independent contractor relationship existed when towing company permitted to tow unauthorized vehicles from shopping center parking lot but shopping center had no control over towing company's surveillance and storage methods or fees), *with Santiago*, 164 Ariz. at 512-13, 794 P.2d at 145-46 (jury could find employer-employee relationship existed where newspaper company involved with details of delivery, directly received complaints, retained broad discretion to terminate, and relied on delivery person's services for survival of business even though delivery person also provided his own transportation, was subject to little supervision, provided his own supplies, and could partially delegate performance of contract).

**¶11** The right-to-control test requires an examination of whether the employer reserves the right to supervise or control the method of performing the contracted service or whether the employer's control is limited to the result, leaving the method to the other party. *Id.* at 508-09, 794 P.2d at 141-42. Here, even if the evidence in the record is not sufficient, standing alone, to raise a material question of fact, it provides a reasonable basis for Simon's request to conduct additional discovery on the existence of a master-servant relationship. And the depositions of Howard, Herman, and Blanco logically relate to that issue. Simon's motion informed the trial court of the reasons the additional discovery was necessary, where

9

he intended to obtain the evidence, and the discovery method he intended to use. This is sufficient to meet the substantive requirements of Rule 56(f). *See Bobo*, 12 Ariz. App. at 141, 468 P.2d at 408 (Rule 56(f) motion akin to motion under Rule 42(d), Ariz. R. Civ. P., which requires showing of sufficient cause and specific reasons justifying motion). We therefore cannot say that granting Simon's timely request for additional disclosure could not have led to admissible evidence on this issue, and the trial court thus abused its discretion in denying Simon's motion for time to conduct additional discovery.[4] *See Hunter*, 190 Ariz. at 322, 947 P.2d at 897, *citing Wachtel v. Beer*, 427 N.W.2d 56, 63-64 (1988) (Rule 56(f) motion "must contain a reasonable excuse or good cause, explaining why a party is presently unable to offer evidence essential to justify opposition to the motion for summary judgment[, and] should be applied liberally.").

II.      Liability of business owner for intentional torts of independent contractor

**¶12**          Simon asserts the trial court erred in granting summary judgment on the issue of whether one who hires an independent contractor may be held liable for the contractor's intentional torts. He contends that, as a business owner, "Safeway had a non-delegable duty to provide safe premises for its business invitees and is liable for the torts of independent

---

[4]We do not suggest that courts should overlook a party's failure to follow the technical requirements of Rule 56(f). Our conclusion is limited to the specific facts of this case, where the motion substantially complied with the rule's requirements, the opposing party did not object on technical grounds, and the trial court addressed the motion on the merits despite the technical deficiency.

contractors it retains to work on its premises."[5]  Although Simon's is essentially a claim of vicarious liability,[6] the court found Safeway could not be vicariously liable because there was no evidence it had attempted to delegate a nondelegable duty.  We disagree.

¶13         Rule 56(c)(1), Ariz. R. Civ. P., permits the entry of summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  *See also Torrez v. Knowlton*, 205 Ariz. 550, ¶ 2, 73 P.3d 1285, 1286 (App. 2003).  Summary judgment should be granted only "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense."  *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d

---

[5]Safeway suggests Simon is making his argument concerning the nondelegable duty to provide safe premises for the first time on appeal.  But in his complaint Simon raised a claim of vicarious liability, and in his response to Safeway's motion for summary judgment his first argument was that because "Safeway [had] a [n]ondelegable [d]uty to [i]ts [b]usiness [i]nvitees to [k]eep [i]ts [p]remises [s]afe," Safeway could be held vicariously liable for the acts of independently contracted security guards.  Furthermore, the trial court specifically addressed this argument in its ruling of September 27, 2006.  It was thus clearly raised below.

[6]In its brief, Safeway notes that Simon made a claim alleging Safeway's independent negligence in its supervising and training of SDI employees.  However, Safeway meshes this claim with its argument that the relationship between it and SDI was that of an independent contractor rather than master-servant, and it relegates the entirety of its argument to a footnote.  Simon clearly raised an independent negligence claim in his original complaint, and the parties discussed it in their initial summary judgment filings; however, we can find no record that the trial court considered or ruled on this claim when it reconsidered and ruled on Safeway's motion for summary judgment.  Therefore, we decline to consider any argument about Safeway's independent negligence on appeal.  *See Jett v. City of Tucson*, 180 Ariz. 115, 123-24, 882 P.2d 426, 434-35 (1994) (appellate court does not address issue trial court failed to resolve).

1000, 1008 (1990). We review de novo a trial court's grant of summary judgment and view the evidence in the light most favorable to the party against whom summary judgment was entered. *Strojnik v. Gen. Ins. Co. of Am.*, 201 Ariz. 430, ¶ 10, 36 P.3d 1200, 1203 (App. 2001).

¶14　　　　The trial court analyzed this issue under Restatement (Second) of Torts §§ 409-429 (1965), which address the liability of a principal or employer for injuries caused by an independent contractor. Restatement § 409 provides the general rule that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." The remaining sections address exceptions to this general rule. §§ 410-429. However, the rule and its exceptions deal primarily with situations in which either an independent contractor is hired to perform physical construction or maintenance on land or premises or the work to be performed is peculiarly or inherently dangerous. They do not directly address, much less resolve, the issue presented in this case, where SDI was hired to provide ongoing services for Safeway on Safeway's premises and where, in the performance of those services, SDI employees are required to interact personally with business invitees of Safeway. However, in order to determine whether vicarious liability applies in this case, we must first determine the nature of the duty Safeway owed to Simon, a business invitee, and whether that duty could be delegated to an independent contractor.

¶15　　　　Because the facts of this case are more akin to premises liability under Restatement (Second) of Torts § 344 (1965) than independent contractor liability under §§

12

409-429, we begin our analysis there. *See Miller v. Westcor Ltd. P'ship*, 171 Ariz. 387, 391 n.3, 831 P.2d 386, 390 n.3 (App. 1991) (choosing theory of analysis of multiple relevant duties based on specific facts of case). Restatement § 344 sets forth the duty a possessor of land owes to its business invitees.[7] It provides, in pertinent part, as follows:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons . . . and by the failure of the possessor to exercise reasonable care to
>
> > (a) discover that such acts are being done or are likely to be done.

Safeway contends this duty extends only to the safety of the physical premises or conditions on the land and does not apply when, as it characterizes Simon's argument, "his injury occurred at the hands of Howard."

¶16        Simon counters that our courts in other instances have found business owners liable for injuries caused by the activities of third parties on their property. In *Martinez v. Woodmar IV Condos. Homeowners Ass'n, Inc.*, 189 Ariz. 206, 207-08, 941 P.2d 218, 219-20 (1997), our supreme court considered whether a condominium association owed social

---

[7]We note that Restatement § 344 also sets forth the standard of care for a possessor of land. However, as discussed in this section, we are only concerned with whether possessors of land may be liable for the actions of third parties on the premises. As this is solely a question of duty, we do not discuss whether Safeway's conduct fell below the standard of care. *See Gipson v. Kasey*, 214 Ariz. 141, ¶ 10, 150 P.3d 228, 230 (2007) (duty is legal obligation requiring defendant conform to standard of conduct to protect others from unreasonable risk of harm; standard of care refers to actions defendant must take or refrain from to satisfy duty).

guests of tenants of one of its unit owners the same duties as a landlord to maintain safe premises with respect to dangerous activities of people on the land. The court first noted that liability, if it existed in the case, would arise from the homeowners association's status as the owner and possessor of the land and its "consequent power to prevent harm by exercising control over its property." *Id.* at 208, 941 P.2d at 220. The court ultimately concluded the rule stated in Restatement § 360, which imposes liability on landlords for dangerous conditions existing in common areas, also applies to condominium associations. *Id.* at 208-09, 941 P.2d at 220-21. And it cited § 344 for the proposition that "[t]he duty to maintain the safety of common areas applies not only to physical conditions on the land but, we believe, also to dangerous activities on the land." *Id*. at 210, 941 P.2d at 222. *See also Robertson v. Sixpence Inns of Am.*, 163 Ariz. 539, 543-44, 789 P.2d 1040, 1044-45 (1990) (reasonable-care duty of owner or occupier of land includes protecting invitee from criminal attacks if owner knew or should have known of danger).

¶17        Similarly, in *Cotterhill v. Bafile*, 177 Ariz. 76, 78-79, 865 P.2d 120, 122-23 (App. 1993), Division One of this court concluded that a bar owner could be held liable for one patron's reasonably foreseeable intentional torts against another patron. In that case, Cotterhill and two friends were drinking alcohol and playing pool at the bar. *Id.* at 77, 865 P.2d at 121. During the evening there was "open antagonism" for more than fifteen minutes between them and another group of bar patrons, but the bartender failed to take any action to calm the situation or ask anyone to leave. *Id.* at 78, 865 P.2d at 122. After Cotterhill was severely beaten on the premises, the bartender made no attempt to determine if he had been

14

injured. *Id.* In finding the bar owner could be liable to Cotterhill, Division One applied Restatement § 344 and concluded "[a] reasonable jury could have inferred that the probability of a fight was evident for several minutes before it occurred, and that the bartender neglected to take reasonable action to avert violence." *Id.* Thus, the court found that the duty to maintain safe premises under § 344 required protection from certain harms caused by other customers. *Id.* at 78-79, 865 P.2d at 122-23.

¶18 Although "the proprietor of . . . business premises is not an insurer of the safety of invitees and is not required at his peril to keep the premises absolutely safe," *Berne v. Greyhound Parks of Ariz., Inc.*, 104 Ariz. 38, 41, 448 P.2d 388, 391 (1968), *Martinez* and *Cotterhill* do not, as Safeway suggests, conflict with that principle. Safeway argues these cases do not apply to this case because they did not address a business owner's liability for the conduct of an independent contractor. We recognize that *Martinez* and *Cotterhill* are distinguishable from the present case because they deal with a landowner's direct liability for its own tortious acts and not a landowner's vicarious liability for an independent contractor's torts. However, they do stand for the limited proposition that a landowner's duty of care to business invitees encompasses activities on the land and is not limited to dangerous conditions, as Safeway suggests.

¶19 Furthermore, comment c to § 344 expressly provides: "The rule stated applies to the acts of independent contractors . . . who are employed or permitted to carry on activities upon the land. The possessor is required to exercise reasonable care, for the protection of the public who enter, to supervise the activities of the contractor . . . ."

15

Therefore, a business owner may not escape liability for his failure to exercise reasonable care merely because the aggrieved party was injured by an independent contractor who was employed to provide services for the business owner on the business premises.

¶20        We turn now to the question of vicarious liability and whether Safeway may be held liable in the absence of its own negligence.  Notwithstanding a business owner's general duty to invitees, Safeway argues that, because it had no obligation to provide security services in the first instance, the fact it undertook to do so does not create a "non-delegable duty," as Simon asserts.  Thus, Safeway contends, it could delegate any duty it assumed to an independent contractor without incurring vicarious liability.  A nondelegable duty is one "for which the employer must retain responsibility, despite proper delegation to another." *Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 101, 800 P.2d 962, 967 (1990).  Such duty arises in those "special situations in which the law prescribes a duty requiring a higher degree of care," such as the affirmative duty of a landowner "to protect those described as his invitees by making and keeping the premises safe." *Id.*  This exception to the general rule of nonliability for employers of independent contractors is "premised on the principle that certain duties of an employer are of such importance that he may not escape liability merely by delegating performance to another." *Id.*  The underlying policy for imposing liability in these instances is that

> the employer is the one who primarily benefits from the contractor's work, the employer is free to select the contractor and may insist on one that is financially responsible and competent, and the employer has the ability to internalize the cost of insurance necessary to distribute the risk as a cost of doing business.

16

*Miller*, 171 Ariz. at 391, 831 P.2d at 390.

**¶21** Safeway relies primarily on *Myers v. City of Tempe*, 212 Ariz. 128, 128 P.3d 751 (2006), to support its argument that it cannot possess a nondelegable duty where no duty existed in the first place. *Myers* involved a municipality's decision to dispatch an independent contractor to a medical emergency under an automatic aid agreement with other municipalities. *Id.* ¶ 1. Our supreme court found that, because the municipality did not have a duty to provide emergency services, it could assume the duty and delegate it to an independent contractor without incurring any vicarious liability. *Id.* ¶¶ 18-19.[8] Safeway contrasts *Myers* and the present case with *Wiggs v. City of Phoenix*, 198 Ariz. 367, ¶¶ 7-10, 10 P.3d 625, 627-28 (2000), in which the City of Phoenix was held vicariously liable for an independent contractor's negligence in maintaining a streetlight based on the supreme court's determination that the city had a nondelegable duty to maintain safe streets.

**¶22** We agree that the precise situation presented in *Wiggs* does not exist here and that Safeway had no inherent duty to provide some of the security services performed by SDI. We do not, however, read *Myers* so broadly as to preclude the imposition of vicarious liability in this case. The court recognized in *Myers* that, in *Wiggs*, it had "noted that if an employer has a special, or non-delegable, duty, the general rule that 'an employer is not liable for the negligence of an independent contractor' does not apply." 212 Ariz. 128, ¶

---

[8]The City of Tempe had entered into the agreement with other municipalities, including the Town of Guadalupe and Guadalupe Fire Department (GFD). For purposes of its discussion, the supreme court treated GFD as an independent contractor of Tempe. *Id.* ¶ 17.

17, 128 P.3d at 755, *quoting Wiggs*, 198 Ariz. 367, ¶ 7, 10 P.3d at 627. But it concluded under the facts of *Myers* that the city did not have a nondelegable duty to provide emergency medical services because "neither the common law nor any statute, regulation, contract, franchise, or charter imposes any duty upon [the city] to provide emergency services." *Id.* ¶ 18. An example of a common law duty is "the duty of a possessor of land to keep his premises reasonably safe for invitees." *Ft. Lowell-NSS Ltd. P'ship*, 166 Ariz. at 101, 800 P.2d at 967.

**¶23**　　　　Here, Safeway hired SDI to perform a service aimed, in substantial part, at protecting Safeway's business operations, property, and profit. Safeway employed SDI specifically to "provide security . . . for . . . customers, visitors, employees, and vendors" and to "enforce control over removal of [Safeway's] property, documents or any vital material as identified by [Safeway]." In performing these services, Safeway authorized SDI to closely observe and monitor store customers; to detain suspected shoplifters and conduct "a 'pat' search for weapons"; and to use force under certain circumstances. Furthermore, Safeway hired SDI to perform these services exclusively on its business premises. Whereas, in *Myers*, the city owed no special duty to provide emergency medical services, *id.* ¶¶ 17-19, the nondelegable common law duties of business owners to their invitees are undoubtedly implicated in this case, *see McDonald v. Smitty's Super Valu, Inc.*, 157 Ariz. 316, 318, 757 P.2d 120, 122 (App. 1998); Restatement § 344. We therefore find the present circumstances distinguishable from those in *Myers*.

18

¶24        Here Safeway did not initially have a specific, nondelegable duty to provide security services. Instead, it voluntarily assumed that duty within the context of the heightened duty it already owed to its business invitees. Having assumed the task of providing security services on its premises, Safeway thus created for itself a personal, nondelegable duty to protect its invitees from the intentionally tortious conduct of those with whom it had contracted to maintain a presence and provide security on its premises. Safeway cannot now disclaim liability merely because the individuals it permitted to interact so closely with its customers had been hired by an independent contractor. Were we to hold otherwise, the potential for abuse would be great. Therefore, we hold that when, as here, a business owner assumes a duty to provide security services, that duty is nondelegable, and the owner will not be insulated from liability for the tortious acts of security personnel hired as independent contractors.[9]

---

[9]To be clear, we do not hold that business owners or possessors owe any duty to the public to provide security services generally. We simply find that where, as here, an owner or possessor undertakes to provide security services, he remains liable as though he directly employed the security personnel, regardless of whether they are technically employed by an independent entity.

19

¶25     The majority of jurisdictions that have considered this issue have reached the

same conclusion.[10]  We find the language of *Adams v. F. W. Woolworth Co.*, 257 N.Y.S.

776, 781-82 (Sup. Ct. 1932), particularly apt:

---

[10]A number of other jurisdictions have recognized the existence of this specific nondelegable duty, either explicitly or by imposing vicarious liability on a store for the intentional torts of independently contracted security guards regardless of the nature of the employment relationship between the store and the security agency.  *See Malvo v. J.C. Penney Co., Inc.*, 512 P.2d 575, 583 n.13 (Alaska 1973) (finding equal liability for employee and independent contractor; noting other courts have found nondelegable duty where store owner undertakes to protect his property); *Noble v. Sears, Roebuck & Co.*, 109 Cal. Rptr. 269, 274 (Cal. App. 1973) (finding no distinction between employee and independent contractor where store owner hires independent detective agency to protect its property);  *Safeway Stores, Inc. v. Kelly*, 448 A.2d 856, 861, 861 n.12 (D.C. 1982) (finding employer-employee relationship, but noting courts have found liability based on nondelegable duty to protect customers and property); *Peachtree-Cain Co. v. McBee*, 316 S.E.2d 9, 11 (Ga. App. 1984) (once owner undertook to provide security services, it incurred personal, nondelegable duty to provide responsible security guards); *Nash v. Sears, Roebuck & Co.*, 163 N.W.2d 471, 475 (Mich. App. 1968) (storekeepers have nondelegable duty to keep invitees safe from intentional torts of independently contracted security guard), *reversed on other grounds*, 174 N.W.2d 818 (Mich. 1970); *Dillon v. Sears-Roebuck Co.*, 253 N.W. 331, 336 (Neb. 1934) (finding store vicariously liable for acts of independent-contractor security guard); *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1179 (Nev. 1996) (property owner has personal, nondelegable duty to provide responsible security personnel); *Adams v. F. W. Woolworth Co.*, 257 N.Y.S. 776, 782 (Sup. Ct. 1932) (imposing higher duty on storekeepers to protect customers from security guards and finding vicarious liability for security guard's tortious acts); *Hendricks v. Leslie Fay, Inc.* 159 S.E.2d 362, 367 (N.C. 1968) (finding provision of security services nondelegable); *Szymanski v. Great Atl. & Pac. Tea Co.*, 74 N.E.2d 205, 206 (Ohio App. 1947) (personal duties performed by store detective cannot be delegated); *Halliburton-Abbott Co. v. Hodge*, 44 P.2d 122, 125-26 (Okla. 1935) (noting weight of authority suggests store owner may not contract for detective services and escape liability on basis detective agency was independent contractor); *W.T. Grant Co. v. Owens*, 141 S.E. 860, 866 (Va. 1928) (where store owner arranges for personal security services to protect store, distinction between employee and independent contractor irrelevant).  *But see Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006) (overruling prior Texas caselaw permitting employer liability based on personal-character-of-duty exception to general rule).

Customers of Woolworth Company are invited into the store to buy its merchandise, for the profit of Woolworth Company. Can it be said that Woolworth Company can disclaim all duty of protecting them from the tortious acts of detectives brought in for the very purpose, among others, of making arrests of its customers? This is not the case of a contractor doing his work negligently. . . . The act itself, if not justified . . . is tortious, irrespective of negligence. . . . Immunity from vicarious liability would permit any store keeper to subject his customers to the hazards of an irresponsible detective agency without peril to himself. He would obtain all the benefits of the surveillance and punishment of shoplifters; he would be subject to none of the penalties for unjustified or unlawful arrests of law-abiding citizens. The opportunities for gross injustice afforded by such a doctrine are too manifest to permit its incorporation into the jurisprudence of our state, without compelling reason.[11]

In sum, Safeway will be vicariously liable for Howard's actions if Howard is found liable in the first instance.[12] *See Wiggs*, 198 Ariz. 367, ¶ 7, 10 P.3d at 627 (where nondelegable duty involved, employer of independent contractor vicariously liable for contractor's conduct); *Ft. Lowell-NSS Ltd. P'ship*, 166 Ariz. at 103-04, 800 P.2d at 969-70 (land possessor vicariously liable for contractor's conduct regardless of possessor's fault).

---

[11]*But see Del Signore v. Pyramid Sec. Servs.*, 537 N.Y.S.2d 640 (N.Y. App. Div. 1989) (provision of security services at performing arts center does not create nondelegable duty because services not so specialized or hazardous as to warrant departure from general rule).

[12]Safeway would also be vicariously liable for Howard's actions if Simon should ultimately prove an employer-employee relationship existed between Safeway and Howard. *See Baker ex rel. Hall Brake Supply v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, ¶ 17, 5 P.3d 249, 254 (App. 2001) ("An employer is vicariously liable for the negligent or tortious acts of its employee acting within the scope and course of employment.").

## Disposition

¶26      The trial court abused its discretion in denying Simon's Rule 56(f) motion for additional disclosure on the issue of whether a master-servant relationship existed between Safeway and Howard. The trial court further erred as a matter of law in determining Safeway could not be vicariously liable for Howard's intentional torts under a nondelegable-duty theory of liability. We reverse and remand for further proceedings consistent with this opinion.

_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
PHILIP G. ESPINOSA, Judge