381 P.3d 248

Tammy Dianne SANTORII, individually, as surviving wife of Mark Anthony Santorii as statutory plaintiff for herself and on behalf of all surviving statutory beneficiaries of Mark Anthony Santorii, deceased, Plaintiff/Appellant,

v.

MARTINEZRUSSO, LLC dba RE/Max Professionals, Defendant/Appellee.

No. 1 CA–CV 15–0211

Court of Appeals of Arizona, Division 1.

FILED 8/23/2016

Beale Micheaels Slack & Shughart, PC, Phoenix, By K. Thomas Slack, Tracy A. Gromer, Counsel for Plaintiff/Appellant

Jones Skelton & Hochuli, PLC, Phoenix, By William D. Holm, Jonathan Paul Barnes, Jr., Jessica J. Kokal, Counsel for Defendants/Appellees

Presiding Judge Kent E. Cattani delivered the opinion of the Court, in which Judge Samuel A. Thumma and Judge Randall M. Howe joined.

## OPINION

CATTANI, Judge:

¶1 This is a wrongful death case in which we address whether Arizona's real estate statutes and regulations establish—as a matter of law—that the relationship between real estate brokers and their salespersons is one of employer and employee. We conclude that although the statutes and regulations impose on a broker the responsibility to closely supervise a real estate transaction and the documentation of that transaction, they do not establish the requisite control over other aspects of a salesperson's activities (such as driving to and from sales appointments), and thus do not dictate an employer-employee relationship as a matter of law. We thus affirm the superior court's order granting summary judgment to MartinezRusso, LLC dba RE/Max Professionals ("MartinezRusso") on the basis that the agent involved in a car accident, Sergio Horcos, was not an employee and thus, MartinezRusso was not vicariously liable for his alleged negligence.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Horcos was returning from a real estate sales appointment when the car he was driving crossed the center line and struck Tammy Santorii's husband's tractor-trailer. Both men died in the collision.

¶3 Santorii brought a wrongful death lawsuit against MartinezRusso, alleging that MartinezRusso was vicariously liable for Horcos's negligence.[1] Following the close of discovery, MartinezRusso filed a motion for summary judgment, arguing it could not be liable for Horcos's actions because he was an independent contractor, not an employee. Santorii filed a cross-motion for partial summary judgment, seeking a declaration that MartinezRusso was vicariously liable as a matter of law.

¶4 The superior court granted MartinezRusso's motion and denied Santorii's motion. After the court certified its ruling under Arizona Rule of Civil Procedure 54(b), Santorii timely appealed.

## DISCUSSION

¶5 Santorii argues that the superior court improperly granted summary judgment to MartinezRusso. She asserts—as she did in her cross-motion for summary judgment—that real estate brokers should be held liable as a matter of law for their salespersons' negligence. She further asserts that summary judgment in favor of MartinezRusso was improper because there were questions of fact regarding whether Horcos was an employee or an independent contractor, even though Horcos's contract specified that he was an independent contractor paid solely by commission.

¶6 We review the grant of summary judgment de novo, considering the facts in the light most favorable to the non-moving party. *US Airways, Inc. v. Qwest Corp.*, 238 Ariz. 413, 420, ¶25, 361 P.3d 942 (App. 2015). Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000 (1990).

### I. Employment Relationship as a Matter of Law.

#### A. Arizona's Real Estate Statutes and Regulations.

¶7 Under Arizona Revised Statutes ("A.R.S.") § 32–2101(48)(a), a real estate broker is a person who "[s]ells, exchanges, purchases, rents or leases real estate."[2] Sales-

---

1. Santorii also sued Horcos's estate, which is not a party to this appeal.

2. Absent material revisions after the relevant date, we cite the current version of applicable statutes, rules, and regulations.

persons are "engaged by or on behalf of" brokers for the purpose of selling, exchanging, purchasing, renting, or leasing real estate. A.R.S. § 32–2101(50). Brokers "shall employ and pay only" licensed salespersons, who in turn can "accept employment and compensation" only from the broker to which the salesperson is licensed. A.R.S. § 32–2155(A). Brokers must maintain records of all transactions facilitated by salespersons and must review all real estate sales agreements. *See* A.R.S. § 32–2151.01(A), (G). Finally, a broker must "exercise reasonable supervision over the activities of salespersons, associate brokers or others under the broker's employ." A.R.S. § 32–2153(A)(21).

¶ 8 We review de novo matters of statutory interpretation. *Catalina Foothills Unified Sch. Dist. No. 16 v. La Paloma Prop. Owners Ass'n*, 238 Ariz. 510, 513, ¶ 8, 363 P.3d 127 (App. 2015). When interpreting statutes, we focus first on the statutory language; if the language is unclear or ambiguous, we may consider legislative context and background to give effect to legislative intent. *Castro v. Ballesteros–Suarez*, 222 Ariz. 48, 52, ¶ 14, 213 P.3d 197 (App. 2009). We apply the same interpretive principles to administrative rules and regulations, which are given the force and effect of law if they are consistent with the statutory scheme. *Gorman v. Pima County*, 230 Ariz. 506, 510, ¶ 18, 287 P.3d 800 (App. 2012).

¶ 9 The purpose of the statutory provisions detailed above is "to protect the public from unscrupulous and unqualified persons" so that the public is not subjected to "untested, unregulated practitioners of isolated *transactions.*" *Bonasera v. Roffe*, 8 Ariz. App. 1, 2, 442 P.2d 165 (App. 1968) (emphasis added). Although § 32–2153(A)(21) provides that a broker must supervise the activities of salespersons, the focus of the broker's responsibility under the statutes set forth above is the substance and documentation of the real estate transaction itself. And a salesperson's driving does not relate in any way to documenting a transaction.

¶ 10 Santorii asserts that MartinezRusso should nevertheless be held liable for Horcos's alleged negligence based on Arizona Administrative Code ("A.A.C.") R4–28–1103(D), which provides that "[a]n employing broker is responsible for the acts of all ... salespersons ... acting within the scope of their employment." But the regulations address the broker's responsibility to supervise real estate "[t]ransactions requiring a salesperson's or broker's license" and the "[u]se of disclosure forms and contracts," as well as managing "[f]iling, storing, and maintaining documents pertaining to transactions." *See* A.A.C. R4–28–1103(A). The regulations do not specify supervision of other aspects of the salesperson's activities, such as prospecting for clients, showing properties, or sales tactics, unless they affect the transaction. *See Carrel v. Lux*, 101 Ariz. 430, 440, 420 P.2d 564 (1966) (holding that a real estate broker may be liable for salespersons' misrepresentations as to property's size). Thus, under the regulations, a broker's responsibility is more limited than that of an employer that supervises all aspects of an employee's work.

¶ 11 Santorii argues that *McClain v. Church*, 72 Ariz. 354, 236 P.2d 44 (1951), and *Hughes v. Industrial Commission*, 113 Ariz. 517, 558 P.2d 11 (1976), are instructive, because they recognize that real estate salespersons are employees of the brokers with which they associate for purposes of the Unemployment Compensation Act and Workers' Compensation Act. But the Arizona Supreme Court has declined to apply *McClain* and *Hughes* in the context of common law tort liability, recognizing that the definition of "employee" may vary based on context and in light of the controlling statutory scheme. *See Engler v. Gulf Interstate Eng'g, Inc.*, 230 Ariz. 55, 59, ¶ 15, 280 P.3d 599 (2012) (noting that the Workers' Compensation Act contemplates a liberal interpretation of the employment relationship, and thus the reasoning underlying workers' compensation cases does not apply to vicarious liability in tort cases); *see also Throop v. F.E. Young & Co.*, 94 Ariz. 146, 150, 153, 382 P.2d 560 (1963) (concluding that an employment relationship for common-law tort purposes is determined by, among other things, the level of control the alleged employer has chosen to exert over the alleged employee, but noting that "Work[ers'] Compensation cases and cases arising under similar social legislation are

not necessarily authority for principles giving rise to common-law liability under the doctrine of respondeat superior"). Moreover, the Legislature subsequently amended the statutes at issue in *McClain* and in *Hughes*, and those statutes now expressly exempt brokers from provisions requiring unemployment insurance or workers' compensation benefits for commission-based salespersons. *See* A.R.S. §§ 23–617(14), –910.

¶ 12 Accordingly, and in light of the regulatory provisions delineating a real estate broker's supervisory responsibilities, the statutory and regulatory framework does not establish, as a matter of law, an employer-employee relationship between brokers and their salespersons. *See also Wiggs v. City of Phx.*, 198 Ariz. 367, 370, ¶ 10, 10 P.3d 625 (2000) (noting that a person who acts as an agent for another can be either an independent contractor or an employee).

## B. Non–Delegable Duty.

¶ 13 Santorii alternatively argues that, even if Horcos was not an employee, MartinezRusso may still be held vicariously liable under a non-delegable duty theory of liability. Although an employer is generally not liable for the negligence of independent contractors, *see Simon v. Safeway, Inc.*, 217 Ariz. 330, 336, ¶ 14, 173 P.3d 1031 (App. 2007), that rule does not apply to non-delegable duties. *Ft. Lowell–NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 101, 800 P.2d 962 (1990). "If the employer delegates performance of [such duties] to an independent contractor and the latter is negligent, the employer will remain liable for any resulting injury to the protected class of persons, as if the negligence had been his own." *Id.*

¶ 14 Non-delegable duties are the exception, not the rule, however, and are "imposed by statute, by contract, by franchise or charter, or by the common law." *Myers v. City of Tempe*, 212 Ariz. 128, 132, ¶ 18, 128 P.3d 751 (2006) (quoting *Ft. Lowell*, 166 Ariz. at 101, 800 P.2d 962). Arizona courts have declined to recognize non-delegable duties in the absence of such authority. *See id.* (concluding that emergency services are not "one of the few" non-delegable duties).

¶ 15 Here, as discussed above, the real estate regulations and statutes impose supervisory requirements over the real estate "transaction," but they do not mandate supervision over the real estate salesperson's driving, let alone impose upon the broker a non-delegable duty to supervise such driving. Accordingly, the superior court did not err by finding that MartinezRusso did not have such a non-delegable duty.

## II. Employment Relationship Based on a Fact–Specific Analysis.

¶ 16 Santorii argues that the superior court improperly granted MartinezRusso's motion for summary judgment notwithstanding evidence that could be construed as establishing an employer-employee relationship under the Restatement (Second) of Agency ("Restatement") § 220 (1958). We disagree.

¶ 17 The Arizona Supreme Court has noted that several criteria must be evaluated in determining whether an employer-employee relationship exists, including the factors set forth in § 220:

1. The extent of control exercised by the master over details of the work and the degree of supervision;
2. The distinct nature of the worker's business;
3. Specialization or skilled occupation;
4. Materials and place of work;
5. Duration of employment;
6. Method of payment;
7. Relationship of work done to the regular business of the employer;
8. Belief of the parties.

*Santiago v. Phx. Newspapers, Inc.*, 164 Ariz. 505, 509, 794 P.2d 138 (1990).

¶ 18 Santorii cites a Restatement illustration, which states, "The salesman of a real estate broker, while driving T, a prospective customer, to view a house, negligently injures him. The broker, but not the broker's principal, is subject to liability to T." Restatement § 220, cmt. e, illus. 2. But this illustration addresses liability as between a broker and the broker's principal, and simply assumes an employer-employee relationship between the broker and the salesperson. The

comment in fact recognizes that a "traveling salesman" may or may not be a servant, and that an employer's liability for acts of the salesperson depends on the nature of the relationship between them. Restatement § 220, cmt. e.

¶ 19 Moreover, a different illustration to § 220 more closely parallels the facts of this case: "P employs a salesman who agrees to give full time to the work but furnishes his own car, is paid by commission and can call on those whom he pleases. It is inferred that the salesman is not P's servant." Restatement § 220, cmt. k, illus. 7. Here, Horcos used his own car, was paid by commission, and decided whom to call on. Thus, the illustrations do not support Santorii's position.

¶ 20 Santorii further argues that the regulatory provisions discussed above, along with the terms of the contract between Horcos and MartinezRusso, establish at least a question of fact as to whether Horcos was an employee. Santorii asserts that Horcos's contract with MartinezRusso demonstrates the broker's right of control because, although it specified that he was an independent contractor, it required Horcos to act exclusively on behalf of MartinezRusso (and use only MartinezRusso's assistants, as needed) to procure listings, solicit purchasers, and perform other "real estate related services." Additionally, the contract included a term requiring Horcos to purchase an auto insurance policy naming MartinezRusso and RE/Max as additional insureds, and it specified that MartinezRusso reserved the right to purchase a policy at Horcos's expense if he failed to do so.

¶ 21 Whether an individual is an employee or an independent contractor is fundamentally a question of control. *See Santiago*, 164 Ariz. at 508, 794 P.2d 138 ("The fundamental criterion is the extent of control the principal exercises or may exercise over the agent."). Employers have the right to control the manner in which employees work, whereas those who retain independent contractors may only direct results, not the manner in which the result is accomplished. *See Throop*, 94 Ariz. at 151–52, 382 P.2d 560 (citation omitted). The right to control is not established when the entity cannot control

the worker's time or the method and means of how the work is completed. *Id.* The right to control is present, however, when the entity can control the details of how sales are made and can "give specific instructions with the expectation that they will be followed." *Santiago*, 164 Ariz. at 509–10, 794 P.2d 138.

¶ 22 In *Santiago*, a delivery truck driver struck a motorcyclist, who then sought to hold the delivery company liable. 164 Ariz. at 506, 794 P.2d 138. In reversing summary judgment for the delivery company, the Arizona Supreme Court concluded that there were fact questions regarding whether the driver was an independent contractor or an employee. *Id.* at 513, 794 P.2d 138. The court noted that the delivery company designated pick-up and delivery times, the delivery route, and the manner in which the papers were to be delivered. *Id.* at 510–11, 794 P.2d 138. Additionally, the delivery company could send a supervisor on the delivery route. *Id.* at 510, 794 P.2d 138. Moreover, the driver added customers when told to do so and followed specific customer requests relayed through the delivery company. *Id.* Under those circumstances, a jury could conclude that the driver was an employee, rendering the delivery company liable for the driver's negligence in driving. *Id.* at 513, 794 P.2d 138.

¶ 23 In *Throop*, however, the Arizona Supreme Court held that an employer was not liable for the wrongful death caused by its traveling salesman because the employer had "no control or right of control" over the manner of the salesman's travel. *See* 94 Ariz. at 153–54, 382 P.2d 560. The court recognized that under the contract between the employer and the traveling salesman, the employer may have had some control over sales procedures, but found that such control "would not justify an inference of any right to control the time, method or manner of the operation of [the salesman's] automobile." *Id.* at 152, 382 P.2d 560. The court noted that evidence showing that the salesman could sell anywhere in the United States, sold other companies' products, and essentially had full discretion over his own sales trips established the employer's lack of control. *Id.* at 152–53, 382 P.2d 560.

¶ 24 Reviewing the record in light of the Restatement factors, and applying *Santiago* and *Throop*, we find no error in the superior court's conclusion that, based on the undisputed facts, Horcos was an independent contractor. Despite working exclusively for MartinezRusso over a six-year period, Horcos was a licensed professional who had nearly complete discretion in the time, manner, and means in which he traveled to meet clients. The contract expressly characterized Horcos as an independent contractor who was "free to devote" his time, energy, effort, and skill as he saw fit. Horcos was not required to keep specific hours, attend sales meetings, or meet any sales quotas, and although MartinezRusso provided optional office space, administrative services, sales leads, and training, Horcos was charged a monthly fee for these services. There is no dispute that Horcos chose the territory where he worked, created his own advertisements, prospected for clients, drove his own car, worked from his home office, worked purely for commission, and set up his own appointments.

¶ 25 MartinezRusso had a degree of control over Horcos, but only as it related to real estate transactions, which are not at issue here. And although MartinezRusso required Horcos to carry auto insurance, that requirement did not dictate a right to control his driving; it is undisputed that MartinezRusso did not tell Horcos which houses to visit, what routes to take, or when to meet clients. *See Alosi v. Hewitt*, 229 Ariz. 449, 455, ¶ 32, 276 P.3d 518 (App. 2012) (restating the "long-standing rule" that a principal is not responsible for physical harm caused by the negligence of its non-employee driver unless the principal authorized and directed the agent's manner of driving). Accordingly, the superior court did not err by granting summary judgment in favor of MartinezRusso on the basis that Horcos was an independent contractor.

## CONCLUSION

¶ 26 For the foregoing reasons, we affirm the superior court's judgment. We award MartinezRusso its taxable costs upon compliance with ARCAP 21.