NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:
MARYNA SACHS, *Petitioner/Appellee,*

*v.*

KENNETH H. SACHS, *Respondent/Appellant.*

No. 1 CA-CV 15-0645FC
FILED 12-30-16

Appeal from the Superior Court in Maricopa County
No. FC2013-053729
The Honorable Joseph C. Kreamer, Judge

**AFFIRMED**

COUNSEL

Wees Law Firm LLC, Phoenix
By James F. Wees
*Counsel for Petitioner/Appellee*

Escolar Law Office, Phoenix
By M. Philip Escolar
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Peter B. Swann and Chief Judge Michael J. Brown joined.

---

**O R O Z C O**, Judge:

¶1        Kenneth Sachs (Father) appeals the superior court's award of $175,000 to Maryna Sachs (Mother), the denial of his motion for a new trial or relief from judgment, and an award of attorney fees to Mother.  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

¶2        Mother and Father married in May 2006, and had one child together.   Before their marriage, Mother and Father entered into a Prenuptial Agreement (Agreement) prepared by Father's attorney.  Section 4 of the Agreement stated that "both parties shall, and do hereby waive, release and relinquish any and all rights to maintenance, alimony or support for themselves."   The exception to this provision in Section 4a, stated that "[Mother] would receive a cash payment from [Father] of $175,000 dollars US," if the marriage were to end in seven years and the parties had a child.  Mother would also be awarded the parties' primary residence.  The Agreement stated that Tennessee law would govern its interpretation.

¶3        Father was diagnosed with Ulcerative Colitis and Crohn's disease in 2010.  In August 2013, Mother filed a Petition for Dissolution of Marriage.

¶4        The parties resolved their custody dispute, and agreed to submit briefs addressing their understanding and the enforceability of the Agreement.  The dispute centered on Section 4a of the Agreement.  In July 2014, the superior court found the Agreement's provision that Father pay Mother $175,000 was enforceable but Mother was not entitled to one of Father's premarital homes.  The decree was entered on October 1, 2014 and

---

[1]        We view the facts "in the light most favorable to upholding the [superior] court's ruling."  *Mahar v. Acuna*, 230 Ariz. 530, 532, ¶ 2 (App. 2012).

Father filed a notice of appeal on October 24, 2014. After the decree was entered, the superior court awarded Mother $12,000 in attorney fees. The appeal was deemed abandoned on January 8, 2015, because there was an undecided tax credit issue. The superior court entered an amended decree addressing all issues in August 2015 based on the July 2014 minute entry.[2]

¶5    In January 2015, after the court found the Agreement enforceable, but before the amended decree was filed, Father filed a Motion for a New Trial. He alleged that in October 2014, he hired a private investigator "to perform an independent investigation into [Mother's] background and financial dealings." The private investigator's report was supposed to be attached to the motion for new trial, but is not part of the record. Father alleged the report concluded that Mother received money from "shady figures in Russia and the Middle East," using "circumvention methods to avoid detection by regulatory authorities," and that Mother's internet behavior "fits the pattern of Islamic Terrorist Financing Activity." The superior court denied the motion without a response from Mother.

¶6    Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 12–120.21.A.1 and -2101.A (West 2016).[3]

**DISCUSSION**

I.    **Dismissal of the Appeal**

¶7    As an initial matter, Mother contends that pursuant to ARCAP 11(c) Father's appeal should be dismissed because he did not provide transcripts of the proceedings in superior court. Father counters that there was no need for a transcript because no evidence was allowed or presented. Father further argues that when the parties agreed to brief the enforceability of the Agreement, everyone thought the "matter could be adjudicated strictly on the briefs, without the need to resort to an evidentiary hearing." During the briefing process, Father decided that his challenges to the enforceability of the Agreement, especially the Public Charge argument, were fact intensive. At the outset of his brief filed in the

---

[2]    The July 2014 minute entry is dated July 15, 2014, was filed on July 18, 2014, and is referred to in the Amended Decree as the July 25, 2014 minute entry.

[3]    We cite to the current version of applicable statutes absent any material change.

superior court, Father requested that the court not make a decision until evidence could be presented. In spite of Father's request, the court held oral argument and determined an evidentiary hearing was not necessary. ARCAP 11(c) does not require dismissal if transcripts are not provided. We therefore deny Mother's request to dismiss Father's appeal for failure to provide transcripts.

## II.    Enforcement of the Agreement

**¶8**            Father argues the trial court erred in awarding Mother $175,000 because Section 4a of the Agreement is unconscionable, unenforceable, and void as a matter of public policy. The parties agree the Agreement should be interpreted according to substantive laws of Tennessee. We review de novo issues of contract interpretation. *Taylor v. Graham Cty. Chamber of Commerce*, 201 Ariz. 184, 192, ¶ 29 (App. 2001) (citation omitted).

**¶9**            Neither party disputes that Father's attorney drafted the Agreement. However, the parties dispute whether Section 4a was drafted by Father's attorney or Mother herself. Father argues he did not "properly or fully understand" Section 4a. Mother contends Father executed the Agreement freely, knowledgeably, in good faith and without undue influence or duress.

**¶10**           Father further argues Section 4a was "clumsily written" and is, therefore, unconscionable and unenforceable. Section 4a states

> [a]t the end of Ten (10) years, if the marriage were to end, [Mother], would receive a cash payment from [Father] $175,000 dollars US. . . . If [Mother] and [Father] have a child(ren) the years shorten by three (3) years of each five (5) year increment, so end of five years becomes end of two years, etc. end of ten (10) years becomes end seven (7) years and so on.

**¶11**           "It is a bedrock principle of contract law that an individual who signs a contract is presumed to have read the contract and is bound by its contents." *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011) (citation omitted). The ordinary meaning of words used in the contract reflect the intention of the parties. *Id.* (citation omitted).

**¶12**           Section 4a is self-explanatory, and its purpose is clear: if the parties have a child, and the marriage ends after seven years, Mother is entitled to a cash payment of $175,000 from Father. Section 4a is not ambiguous and is thus enforceable as written.

### A.  Enforcement of Section 4a Will Not Render Father a Public Charge

¶13    In Tennessee, a provision of a prenuptial agreement limiting or waiving alimony will not be enforced if, at the time of divorce, its enforcement deprives a spouse "of support that he or she cannot otherwise obtain and results in that spouse becoming a public charge," *Cary v. Cary*, 937 S.W.2d 777, 782 (Tenn. 1996), "within a reasonable period of time following the divorce." *O'Daniel v. O'Daniel*, 419 S.W.3d 280, 287 (Tenn. Ct. App. 2013). In such a case, the trial court has to "void the provision and award alimony in accordance with the factors set out in [T.C.A.] § 36–5–101." *Id.*

¶14    Father argues it was reversible error for the superior court to hold that he was not likely to become a public charge in the foreseeable future and for the court to make such a finding without an evidentiary hearing. However, in Father's opening brief to the superior court he states "[Father] realizes that the ultimate analysis on these disputed issues . . . may rely on findings of fact, and if genuine issues of material fact with respect to these issues still remain after the parties have completed briefing, [Father] requests that the Court reserve final adjudication of this issue until all appropriate evidence is presented at trial." The superior court determined that it did not need to hold an evidentiary hearing because it assumed Father's net worth, based on his own statement.

¶15    Father concedes his net worth was approximately $348,000 at the time of divorce and his private insurance benefits would expire in about ten years. Father's financial affidavit indicates his monthly income is $6642 and his expenses are $5089, leaving Father excess income of over $1553. These concessions by Father support the superior court's findings that even after Father pays Mother the $175,000, he will not be broke or financially incapable of paying for his own means and, therefore, would not render him a public charge.

¶16    Relying on the *O'Daniel* case, Father argues when his situation is examined, "the holding in the *O'Daniel* case seems particularly applicable to this case." *See O'Daniel*, 419 S.W.3d 280. Father's reliance on *O'Daniel* is misplaced. In *O'Daniel,* the Wife was disabled, had signed a prenuptial agreement waiving spousal support from husband and was contesting the agreement. *Id.* Whereas in this case, it was Mother who waived spousal support but Father, who had far greater assets at the time of the dissolution, was contesting the support payment. Finding no error, we affirm.

### B.      Section 4a is Not Void as a Matter of Public Policy

**¶17**          Finally, Father argues Section 4a should be void as a matter of public policy because it actively encourages divorce.  Mother counters Section 4a is enforceable, because the longer she stayed married, the greater the sum she would receive upon dissolution.

**¶18**          Tennessee law favors prenuptial agreements.  *O'Daniel*, 419 S.W.3d at 284.  In *Cary v. Cary*, the Tennessee Supreme Court explained that "divorce is such an unfortunate but commonplace fact of life that it is fair to assume that many prospective remarriage partners with existing property and children may want to discuss and agree upon the disposition of their property and alimony rights in the event their marriage, despite their best efforts, should fail.  We think the public policy of this State should allow such parties the freedom to contract and to agree on a provision limiting or waiving alimony."  937 S.W.2d at 781-82.  The court in *Cary* also expressly invalidated the original rationale for voiding prenuptial agreements as promoting divorce.  *Id*.

**¶19**          Father's argument fails as a matter of law because it relies on a common law doctrine that has been expressly overruled.  The Agreement does not violate public policy and is enforceable.

### III.     Court's Denial of New Trial or Relief from Judgment

**¶20**          Father argues the superior court abused its discretion when it denied his motion for new trial or relief from final judgment, because the investigative report was newly discovered evidence.  Mother argues the investigative report was untimely as it relies on facts that allegedly occurred during marriage.

**¶21**          We review the denial of a motion for new trial for abuse of discretion.  *Sobieski v. Am. Standard Ins. Co. of Wis.*, 240 Ariz. 459, 462, ¶ 9 (App. 2016).  A new trial may be granted if material evidence is found which could not have been discovered, with reasonable diligence, prior to trial.  *See Wendling v. Sw. Sav. & Loan Ass'n*, 143 Ariz. 599, 602 (App. 1984); *see also* Ariz. R. Fam. Law P. 83.A.4.

**¶22**          The parties exchanged financial information as early as January 2014.  Father argues he had "no reason to believe Mother's disclosures were anything less than full and frank."  However, in June 2014, Father argued to the superior court "Mother has received funds from mysterious men and/or benefactors."   In June 2014, Father served subpoenas on several financial institutions used by Mother.  If Father

believed he was not receiving accurate information from Mother, he could have filed a motion to compel disclosure of the missing information or requested a continuance to investigate his allegations before the amended decree was entered. He did neither. Also, the report attached to the opening brief is dated November 15, 2014, yet he did not file his motion for new trial until January 15, 2015, two months later. Therefore, the report was not newly discovered evidence that could not have been discovered without reasonable diligence and we find no abuse of discretion.

### IV. Superior Court's Award of Attorney Fees to Mother

¶23 Father argues if the case is remanded for a new trial, the fee award should also be vacated. Because we affirm the denial of the motion for new trial, we also deny Father's request to vacate the attorney fees award.

### V. Attorney Fees on Appeal

¶24 Both parties request attorney fees pursuant to A.R.S. § 25-324 (discretionary award based on financial resources of both parties and reasonableness of their positions taken in the proceedings). The purpose of A.R.S. § 25-324 is "to provide a remedy for the party least able to pay." *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 524, ¶ 13 (App. 2007) (quoting *In re Marriage of Zale,* 193 Ariz. 246, 251, ¶ 20 (1999)).

¶25 Because Father has greater financial resources and Mother's positions are not unreasonable, we award Mother her reasonable attorney fees and costs incurred on appeal, upon compliance with ARCAP 21.

### CONCLUSION

¶26 For the foregoing reasons, we affirm the superior court's judgment.

