IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CK FAMILY IRREVOCABLE TRUST NO. 1, *Plaintiff/Appellant*,

*v.*

MY HOME GROUP REAL ESTATE LLC, et al., *Defendants/Appellees*.

No. 1 CA-CV 19-0207
FILED 07-28-2020

Appeal from the Superior Court in Maricopa County
No. CV2017-052809
The Honorable Theodore Campagnolo, Judge

**AFFIRMED**

COUNSEL

Law Offices of Mark D. Svejda, PLC, Scottsdale
By Mark D. Svejda
*Counsel for Plaintiff/Appellant*

Lipson Neilson P.C., Phoenix
By Daxton R. Watson, Michael H. Orcutt, John J. Browder
*Counsel for Defendants/Appellees*

## OPINION

Judge David B. Gass delivered the opinion of the Court, in which Acting Presiding Judge David D. Weinzweig and Chief Judge Peter B. Swann joined.

**G A S S**, Judge:

**¶1**        Under *Young v. Rose*, a real estate agent who does not sign a listing agreement may not sue to collect a commission under that agreement. *See* 230 Ariz. 433, 437, ¶ 24 (App. 2012). At issue here is a question *Young* left unanswered: May an agent sue to collect a commission under a listing agreement signed by the agent but not initialed by the designated broker within ten business days after it was signed by the parties? *See id.* at 435, ¶ 9 n.3 (discussing A.R.S. § 32-2151.01.G).

**¶2**        The answer is yes. A designated broker's failure to initial a listing agreement within ten business days of the parties signing it as required by subsection 32-2151.01.G "poses no impediment to a civil action for unpaid commissions." *See id.* at 436, ¶ 18. Because the superior court found the real estate agent was entitled to her commission under the listing agreement, its ruling is affirmed.[1]

### FACTUAL AND PROCEDURAL HISTORY

**¶3**        CK Family Irrevocable Trust No. 1 owned a house in Chandler (the house). Siblings Richard and Delilah Kohan are the Trust's co-trustees. The Trust executed a listing agreement (the agreement) with My Home Group Real Estate, LLC and Tina Garcia (collectively, appellees) to market and sell the house. At all relevant times, My Home Group was a licensed Arizona real estate brokerage, and Garcia was a licensed Arizona real estate agent affiliated with My Home Group.

**¶4**        Under the agreement, the Trust was to pay appellees a commission of six percent of the final sale price. When the house sold in March 2017, My Home Group was to receive $89,700.00 (the commission).

---

[1]        Appellees argue a factual issue regarding when the co-trustees fully signed the listing agreement also precludes summary judgment in the Trust's favor. Because this case can be resolved for appellees as a matter of law, this opinion need not address the factual issue.

The Trust filed a declaratory judgment action alleging appellees were not entitled to the commission because Andrew Glenn, My Home Group's licensed broker, did not review and initial the agreement within ten business days as required by subsection 32-2151.01.G. The Trust also alleged appellees breached their fiduciary duty. The parties cross-moved for summary judgment on the declaratory judgment claim, and the superior court ruled in appellees' favor. The parties then stipulated to dismiss the remaining fiduciary duty claim. The superior court awarded appellees $14,727.21 in attorney fees and taxable costs based on the agreement and A.R.S. § 12–341.01.A.

¶5 The Trust timely appealed. This court has jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. § 12-2101.A.1.

**ANALYSIS**

¶6 Summary judgment is appropriate when "no genuine dispute as to any material fact" exists and "the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). This court reviews a grant of summary judgment *de novo*, viewing the facts and reasonable inferences in the light most favorable to the party opposing the motion and will affirm for any reason supported by the record, even if not explicitly considered by the superior court. *See Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003); *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 329, ¶ 14 (App. 2014). This opinion, therefore, assumes appellees violated subsection 32-2151.01.G.

¶7 When interpreting a statute, the primary goal "is to give effect to legislative intent." *See Parsons v. Ariz. Dep't of Health Servs.*, 242 Ariz. 320, 323, ¶ 11 (App. 2017). "[T]he statute's plain language as the best indicator of that intent." *See id.* If the language is clear and unambiguous, courts "must give effect to that language without employing other rules of statutory construction." *Id.* If a statute is ambiguous, however, Arizona courts look "to the rules of statutory construction, and consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *See Stein v. Sonus USA, Inc.*, 214 Ariz. 200, 201, ¶ 3 (App. 2007) (internal citations omitted).

¶8 Beginning with the plain language, § 32-2151.01 is titled "Broker requirements; record keeping requirements; definition." The statute requires a "licensed employing broker" to keep certain records and to exercise specified controls over the broker's trust fund account. *See* A.R.S.

§ 32-2151.01.A-.C,[2] .E, .F, .H. Failure to maintain the required records may lead to suspension or revocation of the broker's license by the Arizona Department of Real Estate (ADRE). *See Holcomb v. Ariz. Dep't of Real Estate*, 247 Ariz. 439, 445, ¶ 20 (App. 2019).

¶9        Subsection G, at issue here, states:

> The designated broker shall review each listing agreement, purchase or nonresidential lease agreement or similar instrument within ten business days of the date of execution by placing the broker's initials and the date of review on the instrument on the same page as the signatures of the parties. A designated broker may authorize in writing an associate broker who the designated broker employs to review and initial these instruments on the designated broker's behalf.

¶10        This statute does not address a broker's to right to recover a commission, much less suggest a party may avoid paying an earned commission, simply because a broker violated subsection G. Instead, the statute focuses on the broker's responsibility to supervise "the substance and documentation of the real estate transaction itself." *See Santorii v. MartinezRusso, LLC*, 240 Ariz. 454, 457, ¶ 9 (App. 2016).

¶11        To be sure, ADRE may issue a licensing sanction or impose a civil penalty against a broker who violates any statute regulating the sale of real estate. *See* A.R.S. § 32-2153. *Holcomb* highlighted the difference between a licensing sanction under § 32-2151.01 and the enforceability of a listing agreement, noting ADRE is expressly charged with enforcing violations of § 32-2151.01. *See* 247 Ariz. at 445, ¶ 20; *see also* A.R.S. §§ 32-2102, -2153, -2160. As such, this court will not speculate on whether ADRE should act against appellees—that issue lies with the regulatory agency alone. *See Focus Point Props., LLC v. Johnson*, 235 Ariz. 170, 175, ¶ 21 (App. 2014). The plain language of subsection 32-2151.01.G, therefore, does not bar recovery.

¶12        Section 32-2151.01's placement within the statutory scheme supports this conclusion. *See Parsons*, 242 Ariz. at 323, ¶ 11. The legislature addressed the right to sue for a commission in § 32-2152. That section is titled "Action by broker or salesperson to collect compensation" and requires brokers and salespersons to prove they were licensed when their

---

[2]        This opinion does not address the impact of a violation of subsection 32-2151.01.C, which addresses a requirement for the contents of the real estate purchase contract, not a listing agreement such as at issue here.

claims arose. *See* A.R.S. § 32-2152.A. Section 32-2152 identifies only two other limits on the right to recover a commission—"violation of §§ 32-2155 [pertaining to licensing] or 32-2163 [pertaining to use of out-of-state broker]." *See* A.R.S. § 32-2152.C. Section 32-2152 does not even reference § 32-2151.01. In striving to "give meaning to each word, phrase, clause, and sentence," the legislature's omission of § 32-2151.01 from a list of requirements bearing on the right to a commission strongly indicates that statute's purpose is not to preclude recovery. *See Ariz. State Univ. Bd. of Regents v. Ariz. State Ret. Sys.*, 242 Ariz. 387, 389, ¶ 7 (App. 2017).

¶13         The Trust primarily relies on *Young* to argue appellees must forfeit the commission because Glenn, their licensed broker, did not initial the agreement within ten business days after Garcia signed it. *Young*, however, involved a real estate agent who allegedly had not signed the listing agreement as required under § 32-2151.02. *See* 230 Ariz. at 435, ¶ 9. Construing that statute *in pari materia* with the statute of frauds, *Young* held that agreement would not be enforceable—and the commission forfeited—in the absence of the agent's signature. *See id.* at 436, ¶¶ 16-17.

¶14         *Young*'s analysis of § 32-2151.02 does not apply here. Section 32-2151.02's purpose is to establish substantive requirements for an enforceable listing agreement. Failure to comply with those requirements renders the agreement unenforceable under the "strict requirements" Arizona places "on real estate professionals who seek to recover commissions." *See id.* at ¶ 13 (internal quotation omitted). The holding in *Young* was consistent basic contract principles and § 32-2151.02, which render a listing agreement unenforceable without valid signatures from each party. *Young* did not address forfeiture of a commission under an otherwise valid and enforceable listing agreement.

¶15         As discussed above, § 32-2151.01 has a different purpose. It is regulatory in nature. *See Holcomb*, 247 Ariz. at 445, ¶ 20. Noncompliance with § 32-2151.01, therefore, exposes the broker to sanctions by ADRE but does not affect the validity and enforceability of the agreement itself and does not lead to forfeiture. Indeed, no Arizona case cited by the Trust, or found by this court, authorizes or requires forfeiture for a technical violation of this nature.

¶16         Accordingly, a broker's failure to comply with subsection 32-2151.01.G does not require forfeiture of a commission payable under a duly executed and otherwise valid listing agreement.

**ATTORNEY FEES**

¶17 The Trust also appeals the superior court's award of $14,727.21 in attorney fees and taxable costs to appellees. Because this opinion affirms the entry of judgment for appellees, and because the Trust does not argue the fees were unreasonable, the superior court's fee and cost award under the agreement and A.R.S. § 12–341.01.A is affirmed. *See A. Miner Contracting, Inc. v. Toho–Tolani Cty. Improvement Dist.*, 233 Ariz. 249, 261, ¶ 40 (2013).

¶18 Appellant and appellees requested attorney fees and costs related to this appeal. This court exercises its discretion to grant appellees, as the prevailing party, reasonable attorney fees and taxable costs on appeal upon compliance with ARCAP 21.

## CONCLUSION

¶19 Because the superior court appropriately granted summary judgment for appellees, it is affirmed in all respects.

