NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GREG STARR, *Plaintiff/Appellant,*

*v.*

BANNER HEALTH, et al., *Defendants/Appellees.*

No. 1 CA-CV 25-0739

FILED 06-03-2026

Appeal from the Superior Court in Maricopa County
No. CV2023-051822
The Honorable Christopher Whitten, Judge

**AFFIRMED**

COUNSEL

Sandoval Law PLLC, Phoenix
By David J. Sandoval
*Counsel for Plaintiff/Appellant*

Broening Oberg Woods & Wilson, Phoenix
By Jay A. Fradlkin, Kelley M. Jancaitis
*Co-Counsel for Defendants/Appellees*

Jones, Skelton & Hochuli P.L.C., Phoenix
By Eileen Dennis GilBride
*Co-Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge Angela K. Paton joined.

---

**P E R K I N S**, Judge:

¶1 Greg Starr appeals the superior court judgment dismissing his claims for wrongful death and medical negligence against Dr. Paramvir Singh and Dr. Doris Chafac. He also appeals the grant of summary judgment in favor of Banner Health dba Banner Desert Medical Center ("Banner") on his vicarious liability claim for the actions of Dr. Raymond Hemmert. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Renee Starr was a 36-year-old woman with lupus and Raynaud's disease. She occasionally suffered flare-ups of her conditions that required emergency treatment. Renee preferred to be treated at Banner's emergency department because the hospital was clean, the medical staff was friendly, and the staff was familiar with her medical history.

¶3 On May 19, 2021, her mother called an ambulance when Renee began experiencing severe abdominal pain, nausea, and vomiting. Renee requested the paramedics take her to "Banner on Dobson." Her mother accompanied her. Dr. Hemmert, a non-party, was the attending emergency room physician. Sometime during the night, Renee was admitted to the main hospital. Around 7:00 a.m. on May 20th, nurses found Renee non-responsive. She passed away in Banner's emergency department that morning.

¶4 On May 16, 2023, Greg Starr, Renee's father, sued on behalf of himself and Renee's beneficiaries for medical negligence and wrongful death. He named as defendants Banner, the two on-shift emergency room nurses, the hospitalist who signed Renee's death certificate (Dr. Singh), the hospitalist on shift at the main hospital (Dr. Chafac), and any other Banner employees who may be liable for Renee's death. He certified that expert testimony would be needed to prove his claims.

¶5        In March 2024, Starr provided a preliminary expert affidavit from Dr. Angelique Campen, a board-certified emergency room physician, opining that Dr. Hemmert fell below the standard of care. Shortly after, the hospitalists and the nurses moved to dismiss Starr's complaint against them because Starr did not serve a preliminary expert affidavit addressing the standard of care for a hospitalist or nurse as required under Arizona Revised Statutes Section 12-2603. In response, Starr requested a time extension to comply with Section 12-2603. Starr argued he required limited discovery into Banner's policies to determine when the duty of care transferred from Dr. Hemmert in the emergency department to Dr. Chafac in the main hospital.

¶6        In April 2024, the court denied Starr's extension request, dismissed the nurses with Starr's consent, and granted the hospitalists' motion to dismiss due to Starr's failure to file a preliminary expert affidavit. All that remained was Starr's claim of vicarious liability against Banner for the actions of Dr. Hemmert. In February 2025, Banner moved for summary judgment, alleging it could not be liable for Dr. Hemmert because he was an independent contractor who worked for Progressive Medical Associates, PLLC ("PMA"). The court granted summary judgment in favor of Banner in July 2025 and entered a final judgment in favor of all defendants in August 2025. Starr now appeals from that judgment. We have jurisdiction. A.R.S. §§ 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

### I.        Dismissal

¶7        We review *de novo* a dismissal of a case based on the failure to comply with Section 12-2603, *Francisco v. Affiliated Urologists Ltd.*, 258 Ariz. 95, 100, ¶ 18 (2024), but review a court's denial of a time extension for compliance with Section 12-2603 for abuse of discretion, A.R.S. § 12-2603(C) ("The court *may* extend the time for compliance with this section on application and good cause shown." (emphasis added)).

¶8        A plaintiff seeking to sue a health care professional must certify whether expert testimony will be needed "to prove the health care professional's standard of care or liability for the claim." A.R.S. § 12-2603(A). If the plaintiff asserts that the expert testimony is necessary, the plaintiff must serve a preliminary expert opinion affidavit with the Arizona Rule of Civil Procedure ("Rule") 26.1 initial disclosures. A.R.S. § 12-2603(B). The affidavit must assert (1) "[t]he expert's qualifications to express an opinion" on the standard of care, (2) "[t]he factual basis for each claim,"

(3) the "health care professional's acts, errors or omissions that the expert considers to be a violation of the applicable standard of care," and (4) how those "acts, errors or omissions caused or contributed to the damages." A.R.S. § 12-2603(B). If the expert does not have personal knowledge of the case, the expert must "base an opinion on the facts as alleged by the plaintiff and state that these facts, if true, violate the accepted standard of care." *Gorney v. Meaney*, 214 Ariz. 226, 230, ¶ 11 (App. 2007).

**¶9**        First, Starr argues that Dr. Campen's affidavit satisfied his burden under Section 12-2603 with respect to the hospitalists. But Starr has not explained how Dr. Campen, an emergency room physician, is qualified to opine on a hospitalist's standard of care. *See* A.R.S. §§ 12-2603(B)(1) (the affidavit must contain the expert's qualifications to opine on the standard of care); -2604(A)(2)(a) (to be qualified under Section 12-2603, the expert must have devoted their time to "[t]he active clinical practice of the same health profession as the defendant").

**¶10**        Next, Starr contends the superior court abused its discretion by declining to grant him an extension to comply with Section 12-2603, allowing him time for limited discovery into when, if at all, a duty of care transferred from Dr. Hemmert to Dr. Chafac under Banner's policies and procedures. Starr claims he could not procure the affidavit without asking an expert to speculate on facts, thus courting sanctions.

**¶11**        But the expert needed only to rely on the facts as Starr had alleged them, *Gorney*, 214 Ariz. at 230, ¶ 11, and Starr's complaint already alleged Dr. Chafac undertook a duty of care for Renee. At the preliminary affidavit stage, Starr did not need to conduct limited discovery into Banner's policies and procedures to allege a duty existed when he had already done so in his complaint.

**¶12**        Starr argues he did not have time to produce a preliminary affidavit from a qualified hospitalist. But Starr had three years after Renee's death to produce a preliminary affidavit from a hospitalist, and he evidently had time to produce a preliminary affidavit from an emergency room physician. The court did not abuse its discretion by denying Starr an extension to comply with Section 12-2603.

## II.    Summary Judgment

**¶13**        Starr argues the court erred by granting summary judgment to Banner. We review a grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the party against whom summary

judgment was entered. *Roebuck v. Mayo Clinic*, __ Ariz. __, __, ¶ 7, 575 P.3d 375, 380 (2025).

## A. Non-Delegable Duty

**¶14** Starr first contends Banner had a non-delegable duty of care to patients in its emergency department. As a general rule, employers are not liable for the actions of independent contractors. *Wiggs v. City of Phoenix*, 198 Ariz. 367, 369, ¶ 7 (2000). But a narrow exception to this rule exists when the employer has a special, non-delegable duty. *Id.* Non-delegable duties may be imposed by common law, statute, contract, franchise, or charter. *Ft. Lowell–NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 101 (1990). Absent such authority, Arizona courts decline to recognize a non-delegable duty. *Santorii v. MartinezRusso, LLC*, 240 Ariz. 454, 458, ¶ 14 (App. 2016); *see Myers v. City of Tempe*, 212 Ariz. 128, 132–33, ¶¶ 17–19 (2006) (concluding that no authority imposes a non-delegable duty on a city to provide emergency services).

**¶15** No statute imposes a duty of care on Banner, let alone a non-delegable duty. Starr claims several Arizona administrative regulations, along with Section 36-401, impose a non-delegable duty on Banner. *See* A.A.C. R9-10-201 to R9-10-235; A.R.S. § 36-401. Not so. These regulations relate to a hospital's duty to retain and supervise competent physicians, *see Kopp v. Physician Grp. of Ariz., Inc.*, 244 Ariz. 439, 441–42, ¶ 11 (2018), which Starr does not allege Banner violated. And Section 36-401 merely provides definitions. Starr's authorities do not impose a non-delegable duty on Banner to ensure those physicians provide non-negligent care in all cases.

**¶16** Nor does Banner's contract with PMA impose a non-delegable duty on Banner. Requiring PMA physicians to be credentialed, provide services in accordance with Banner's policies and procedures, comply with all applicable laws and regulations, and granting Banner a right of removal over a physician fulfills Banner's duty to retain and supervise competent physicians. It does not impose on Banner a non-delegable duty of care to individual patients.

**¶17** Alternatively, Starr asserts that Banner owed a non-delegable duty of care to Renee because hospitals have a "special relationship" with patients. Special relationships may arise when recognized by our common law, "specifically, case law or Restatement sections consistent with Arizona law." *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563, ¶ 2 (2018).

¶18 Starr urges us to find a special relationship exists because, under the Restatement (Third) of Torts, hospitals are voluntary custodians of patients and have a superior ability to protect them. Restatement (Third) of Torts § 40(b)(7) (2012); *see also id.* at cmt n (some courts have found a special custodial relationship exists between hospitals and patients). That approach is inconsistent with Arizona law. Though Arizona has recognized special relationships in other contexts, *see Nunez v. Pro. Transit Mgmt. of Tucson, Inc.*, 229 Ariz. 117, 121, ¶ 17 (2012) (bus drivers have a special relationship with their passengers); *Kelly*, 166 Ariz. at 104 (landowners have a special relationship with invitees); *Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 373–74, ¶¶ 15–17 (2021) (schools have a special relationship with students), Starr has pointed to no Arizona case, nor are we aware of any, recognizing a special relationship between a hospital and a patient.

¶19 To the contrary, Arizona courts have analyzed medical malpractice occurring at hospitals in terms of (1) the relationship between the physician and the patient, *see Hafner v. Beck*, 185 Ariz. 389, 391 (App. 1995) (no doctor-patient relationship between examining physician and claimant in worker's compensation case); *Diggs v. Ariz. Cardiologists, Ltd.*, 198 Ariz. 198, 203, ¶ 27 (App. 2000) (doctor-patient relationship exists between a consulting radiologist and a patient); *Stanley v. McCarver*, 208 Ariz. 219, 223, ¶ 12 (2004) (existence of formal doctor-patient relationship is one factor to determine whether a physician owes a duty), and (2) the relationship between the physician and the hospital, *see Beeck v. Tucson Gen. Hosp.*, 18 Ariz. App. 165, 169 (1972) (a hospital may be vicariously liable for a physician who is its actual agent); *Fadely v. Encompass Health Valley of Sun Rehab. Hosp.*, 253 Ariz. 515, 519–20, ¶¶ 14–15 (App. 2022) (a hospital may be vicariously liable for a physician who is its apparent agent). Adopting Starr's proposed approach would be inconsistent with and would upend our longstanding common law framework. Starr's non-delegable duty theory fails as a matter of law.

## B. Actual Agency

¶20 Next, Starr argues Banner was responsible for Dr. Hemmert as an actual or apparent agent of Banner. Whether agency exists is generally a fact question and only becomes a legal question when all material facts are undisputed. *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 595, ¶ 21 (App. 2007). A physician on a hospital staff is not necessarily the hospital's actual agent. *See Evans v. Bernhard*, 23 Ariz. App. 413, 417 (1975). When determining whether a physician is a hospital's agent, the fact finder must examine the specific relational facts between the hospital and the physician. *Id.* The focus is on the degree of the hospital's control over the

physician. *See Gregg v. Nat'l Med. Health Care Servs. Inc.*, 145 Ariz. 51, 55 (App. 1985).

¶21        Our courts have considered multiple factors when analyzing actual agency between a hospital and a physician, including: (1) if the hospital arranged services for the physician's patients, (2) who handled billing for the physician, (3) who paid the physician and set his schedule, (4) whether the hospital furnished the facilities, equipment, and support staff, (5) if the physician exclusively provided services at the hospital, (6) if the physician held leadership positions at the hospital, and (7) if the physician's group provided services under hospital rules and procedures. *See Beeck*, 18 Ariz. App. at 169–71.

¶22        Here, the record shows that PMA billed for Dr. Hemmert's services, paid him, and set his schedule. There is no evidence in the record that Banner arranged services for Dr. Hemmert's patients or that Dr. Hemmert held a leadership role at Banner. Banner's contract with PMA did not require PMA physicians to exclusively provide their services to Banner and Starr has not produced evidence that Dr. Hemmert provided services only at Banner. These factors weigh against actual agency. The record also shows that Banner supplied Dr. Hemmert with facilities, equipment, and support staff. This factor weighs in favor of actual agency.

¶23        The parties do not dispute on appeal that Dr. Hemmert provided services according to Banner's policies and procedures. Indeed, Banner's contract with PMA requires PMA's contracts with physicians to include a clause requiring their compliance with Banner's policies and procedures. Rather, the parties dispute the amount of control Banner exerted over Dr. Hemmert through its policies and procedures.

¶24        Starr points to Banner's requirements for licensure under Arizona's statutory and regulatory scheme, *see* A.A.C. R9-10-201 to R9-10-235; A.R.S. § 36-401, as proof that Banner controlled Dr. Hemmert through its policies and procedures, but those policies and procedures are not in the record. Once Banner met its burden of showing Starr had no evidence from which a reasonable jury could find actual agency, the burden of production shifted to Starr to produce some evidence, such as Banner's policies and procedures and Dr. Hemmert's contract, showing that Banner had control over Dr. Hemmert. Starr did not do so. It was not enough to provide the contract between Banner and PMA when that contract merely references the policies and procedures; it does not explain what those procedures are or how much control they grant Banner over Dr. Hemmert's medical judgment. Starr contends the policies remained in Banner's

exclusive control, but he did not request Rule 56(d) relief in the superior court to obtain them and thus waived that argument. Ariz. R. Civ. P. 56(d)(1) (a party opposing summary judgment who cannot present evidence to contest summary judgment can request additional discovery to obtain that evidence); *Edwards v. Bd. of Supervisors*, 224 Ariz. 221, 223–24, ¶ 19 (App. 2010) (failure to request additional discovery under Rule 56(d) waives the issue).

**¶25**         Without the benefit of reviewing the policies and procedures, Banner's compliance with the regulations alone is not sufficient indicia of control because the regulations do not require Banner to direct Dr. Hemmert's day-to-day medical judgment. Nor does Banner's authority to revoke Dr. Hemmert's medical privileges mean Banner has actual control. Banner's compliance with the regulations and Banner's ability to remove Dr. Hemmert from its medical staff relate to Banner's right to direct the results, not the means, of Dr. Hemmert's work. *See Santorii*, 240 Ariz. at 459, ¶ 21 ("Employers have the right to control the manner in which employees work, whereas those who retain independent contractors may only direct results, not the manner in which the result is accomplished."). Thus, Starr has not shown that Banner controlled Dr. Hemmert through its policies and procedures. This factor weighs against actual agency.

**¶26**         On this record, the undisputed material facts do not establish that Dr. Hemmert was an actual agent of Banner.

### C. **Apparent Agency**

**¶27**         To prove apparent agency, Starr must show (1) that Banner intentionally or inadvertently led Renee to believe Dr. Hemmert was its agent and (2) that she justifiably relied on Banner's representations. *Fadely*, 253 Ariz. at 520, ¶ 15.

**¶28**         As proof of Banner's representations, Starr argues that Renee liked Banner for its clean, friendly environment and familiarity with her medical history, that no one at Banner told Starr or Renee's mother ("the Starrs") that emergency room physicians were independent contractors, that the Starrs had no familiarity with medical operations, and that the Starrs had "no idea" that Banner's emergency department was staffed with independent contractors. But Starr does not explain what actions Banner had undertaken to lead to his assumptions. For example, an allegation that Dr. Hemmert wore a Banner-labeled badge would have been a Banner representation. *See Amick v. Banner Health*, 1 CA-CV 22-0401, 2023 WL

5217704, at *8, ¶ 45 (Ariz. App. Aug. 15, 2023) (mem. decision). Without more, Starr's contentions are mere assumptions.

**¶29**       At most, Starr points to Banner's website, which advertises that it runs an emergency department and provides emergency services. But Starr has not alleged that Renee relied on the website advertisements in deciding to seek treatment there. Instead, the undisputed facts show Renee chose Banner because of her past positive experiences with the emergency department. Accordingly, Starr has not shown that Dr. Hemmert was Banner's apparent agent.

## CONCLUSION

**¶30**       We affirm. We award Banner its taxable costs on appeal pursuant to its compliance with ARCAP 21.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR